KRAUSE, Respondent, v. MENZNER LUMBER & SUPPLY COMPANY, Appellant.

*February 6—March 3, 1959.*

For the appellant there were briefs by *Genrich, Terwilliger, Wakeen, Piehler & Conway,* attorneys, and *Paul*

*D. Hilton* of counsel, all of Wausau, and oral argument by *Herbert L. Terwilliger.*

For the respondent there was a brief by *Schmitt & Wurster* of Merrill, and oral argument by *Leonard F. Schmitt.*

DIETERICH, J. The plaintiff had been in the logging business since he was fourteen years of age and was an owner and operator of a logging business.

On February 1, 1955, Henry Krause delivered a load of logs to the defendant company at Marathon City. Krause drove into the yard and an employee of the defendant directed him to unload the logs 15 to 18 feet north of the planing mill. This particular area was a "dished-out place running east and west, on the side of a hill that sloped upward in general from north to south." The plaintiff's truck was headed east, and the left side was close to the north edge of the unloading spot. The north edge sloped sharply to the south. The area was covered with hard-packed snow and ice. The plaintiff took off the first tightener on the front end of the logs. He then went to the rear and started to unhook the bottom hook. The plaintiff saw a top log break out and begin to fall. He tried to jump back, but he was standing on a slope, his feet slipped forward into the depressed area. He did not fall, but the log hit him and knocked him down.

It is undisputed that the defendant's yard was slippery, and that sand or a similar substance upon the snow would not have alleviated the slippery condition. The plaintiff, however, maintained that defendant should have applied sawdust over the slippery area, which would give a better footing. There is conflicting testimony as to whether or not sawdust on the hard-packed snow would have improved the slipperiness of the unloading area.

This action was brought under the safe-place statute. Sec. 101.01 (4), Stats. 1955, provides:

"The term 'employee' shall mean and include every person who may be required or directed by any employer, in consideration of direct or indirect gain or profit, to engage in any employment, or to go or work or be at any time in any place of employment."

Sec. 101.01 (5), Stats. 1955, provides:

"The term 'frequenter' shall mean and include every person, other than an employee, who may go in or be in a place of employment or public building under circumstances which render him other than a trespasser."

Sec. 101.06, Stats. 1955, provides:

"Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair, or maintain such place of employment or public building, and every architect shall so prepare the plans for the construction of such place of employment or public building, as to render the same safe."

2 Wisconsin Administrative Code, Rules of Industrial Commission on Safety, sec. Ind 1.65, provides:

"*Stakes and binders.* Stakes or binders used on logging cars or trucks to hold the load of logs in place when being transported, must be so designed as to make it possible for the operator to loosen or disengage such stakes and binders when standing in a safe position."

The evidence discloses that the only place not covered with sawdust or bark was the place where the plaintiff was directed by an employee of the defendant sawmill to unload the load of logs.

The contract with the defendant company provided that the company had complete supervision of the entire operation.

Fred Menzner, the president, general manager, and supervisor of all the logging and lumbering operations at the plant testified that the scaler has the right to direct all logs coming into the yard as to where they load and unload. He further stated that the ground immediately north of where the truck was standing was covered with packed snow, that the truck was facing east, that the right side of the truck was about 15 or 18 feet north of the north edge of the planing mill, and that that was the right place to unload the logs. That his men spread sawdust in the area to give the trucks better traction to get up grade into the yard.

The evidence discloses that the only part that was not covered by sawdust was an area of 10 or 20 feet where the plaintiff was unloading. That the plaintiff unloaded the logs at the place designated for the convenience of the defendant.

Plaintiff Krause, a logger with forty-two years' experience, testified that when men work around logs you put down whatever is available to give them good footing and traction. If you have sawdust, you put it on. When you put sawdust on snow and ice it freezes into the ice.

William F. Natzke, a logger for thirty-four years, testified on behalf of the plaintiff, that if he had to unload in a slippery area he would try to get some dirt or sand or bark to take away the slipperiness and give better traction, because the man unloading the logs has to be able to move when the

load of logs breaks. Natzke admitted that the sawdust would freeze to the snow or ice and give a man better footing.

Harry Doering, another witness on behalf of the plaintiff, stated that sawdust will adhere to the hard-packed snow or ice if it is below 32 degrees. A log cut in the winter below 32 degrees is not frozen. If it is down to zero when the log is cut the sawdust will be frozen, but it will adhere to hard-packed snow or ice.

Several experienced loggers testified on behalf of the plaintiff. From their testimony it is apparent that a man unloading logs must have good footing to be able to jump clear when the logs break.

The burden of proof was upon the plaintiff to show that the defendant failed to provide a place of employment free from danger to frequenters and employees as the nature thereof then reasonably permitted.

The plaintiff's truck was parked in a depressed area and according to his testimony he took off the first tightener on the front end of the logs, and threw it in the box. He then went to the rear and started to unhook the bottom chain when he saw a top log break out and start to fall. He stated that he watched all the time. When he saw the log coming he tried to jump back, slipped forward into the depressed area, and was hit by the log. The load of logs was 11 to 12 feet high so standing on the ground one could not see how the inside logs were riding. Plaintiff claimed that he pulled on the chains and if they were tight, this meant the load was in good shape.

It is undisputed that the premises were slippery at the time and place in question. The evidence discloses that there was plenty of sawdust in the defendant's yard which would have provided a reasonably adequate safeguard to render the place of employment safe.

The trial court in the present case concluded that there was sufficient evidence to go to the jury upon the question of whether or not there was a violation of the safe-place statute, sec. 101.06, Stats. 1955, and that it would take judicial notice of the safety order in framing the questions in the special verdict, and also on the question of negligence of the plaintiff in checking his load before removing the chains. The court submitted the following questions in a special verdict:

"First Question: Did the defendant, at the time the plaintiff was injured, fail to provide a place of employment which was as free from danger to frequenters as the nature thereof then reasonably permitted:

"(a) With respect to failing to cover the unloading area with sawdust? Answer: Yes.

"Second Question: If you answer subdivision (a) in the first question 'Yes,' then answer this:

"Was such failure on the part of the defendant a cause of the injury to the plaintiff? Answer: Yes.

"Third Question: At the time and place in question, was the plaintiff negligent as to his own safety:

"(a) With respect to where he unloaded? Answer: No.

"(b) With respect to checking his load before removing the chains? Answer: Yes.

"(c) With respect to where he stood while removing the rear chain? Answer: No.

"(d) With respect to lookout? Answer: No.

"(e) With respect to putting sawdust in the area where he was to stand while removing the rear chain? Answer: No.

"Fourth Question: If you answer any of the inquiries in the third question 'Yes,' then answer the corresponding inquiry here following: . . .

"(b) With respect to checking his load before removing the chains? Answer: Yes.

"Fifth Question: If you answer the second question 'Yes,' and answer one or more subdivisions of the fourth question 'Yes,' thereby finding that both the defendant and the plain-

tiff contributed to produce the injury to the plaintiff, then answer this:

"In what proportion did each contribute to produce plaintiff's injuries:

"(a) The defendant? Answer: 70 per cent.

"(b) The plaintiff? Answer: 30 per cent.

"Sixth Question: What amount of damages did the plaintiff sustain by reason of the accident:

"(a) For medical, hospital, and other expenses of treatment? Answered by the court: $857.15.

"(b) For personal injuries? Answer: $18,000."

The usual motions were made after verdict and denied. The lower court entered judgment upon the verdict.

The appellant-defendant, as owner of the lumber company in question, owed such duty to the plaintiff as is enjoined by the safe-place statute. *Criswell v. Seaman Body Corp.* (1940), 233 Wis. 606, 290 N. W. 177, and *Padley v. Lodi* (1940), 233 Wis. 661, 290 N. W. 136.

A place must not only be reasonably safe, as it was required to be by our common-law decisions, but it must be as "free from danger as the nature of the place will reasonably permit." *Tomlin v. Chicago, M., St. P. & P. R. Co.* (1936), 220 Wis. 325, 329, 265 N. W. 72; *Bunce v. Grand & Sixth Building* (1931), 206 Wis. 100, 104, 238 N. W. 867; *Allison v. Wm. Doerflinger Co.* (1932), 208 Wis. 206, 208, 242 N. W. 558; *Washburn v. Skogg* (1931), 204 Wis. 29, 34, 233 N. W. 764, 235 N. W. 437; *Rosholt v. Worden-Allen Co.* (1913), 155 Wis. 168, 174, 144 N. W. 650.

It is our opinion that there is credible evidence to support the finding on the part of the jury that the defendant failed to provide a place of employment which was as free from danger to frequenters as the nature thereof then reasonably permitted with respect to failing to cover the unloading area with sawdust, and constituted causal negligence on the part of the defendant.

We are also of the opinion that there was sufficient evidence to support the jury's finding that the plaintiff was causally negligent for his own safety with respect to checking his load before removing the chains. The evidence is conflicting with respect to the negligence of the plaintiff, but nevertheless it did present a jury question as to the comparative negligence on the part of the plaintiff, and such question was properly submitted to the jury.

We, therefore, conclude that the issues in this case were properly presented to the jury, and the judgment of the trial court is affirmed.

*By the Court.*—Judgment affirmed.