ROGERS, by Guardian *ad litem,* Appellant, v. CITY OF OCONO-MOWOC and another, Respondents.

*May 1—June 5, 1964.*

For the appellant there was a brief by *Morrissy, Morrissy, Sweet & Stowe* of Elkhorn, and oral argument by *Ralph R. Stowe*.

For the respondent city of Oconomowoc there was a brief by *Patrick Snyder,* city attorney, and *Hippenmeyer & Reilly* of Oconomowoc, and oral argument by *Richard S. Hippenmeyer.*

For the respondent William Houtz there was a brief by *Lowry, Hunter & Tikalsky* of Waukesha, and oral argument by *Richard N. Hunter.*

FAIRCHILD, J. The circuit court ruled that the safe-place statute was inapplicable, and refused to submit questions to the jury upon a safe-place theory. Plaintiff challenges this ruling upon appeal. The circuit court reserved a ruling on defendants' motions for directed verdict, and submitted the question whether they were negligent with respect to giving warning of the depth of the water. Apparently the negligence of the city was considered a possible issue because of a claim that its immunity had been waived by the form of insurance policy it obtained, and decision on that claim was reserved. Apparently, also, the court reserved decision on a claim by defendant Houtz that there was no evidence of any actionable negligence on his part. On appeal, plaintiff asserts that the evidence compelled a finding of negligence as a matter of law. In addition plaintiff claims error in failing to give an instruction and in failing to declare a mistrial.

1. *Was the swimming and beach area or wall a public building?* Plaintiff contends that the beach, and more particularly the retaining wall from which he dove, constituted a public building as defined in sec. 101.01, Stats., so as to be subject to the safe-place requirements of sec. 101.06.

The complaint alleged that the part consisted "of a bath house, concession building, sea wall, attached pier, floating pier, life guard stands and artificial beaches, . . . all of which were connected and constituted a structure within the

meaning of Section 101.06 Wisconsin Statutes." On the first appeal we indicated very serious doubts whether, by themselves, the seawall and artificial beaches have the semblances of buildings, but emphasized the allegation that these together with bathhouse, concession building, pier, and lifeguard stand constituted a single structure. Giving the complaint the required liberal construction, we held that it had alleged that all these things were "an integral physical unit, reasonably described as a public building within the meaning of the statute."

The evidence showed that the city had developed a recreational park along the south shore of Lac La Belle. Included in the park was a beach and swimming area. The beach was separated from the water by a Lannon stone retaining wall 400 feet long, running from east to west; the swimming area occupied the east 130 feet. The area was bounded on the east by a wooden pier which extended 70 feet into the water and on the west by a rope held above the water by buoys. Reference was made in the complaint to a bathhouse and concession stand but no evidence was presented as to the location of these structures.

The water at the retaining wall was approximately one to two feet deep; the wall rose a foot above the water. The sand beach extended in back (south) of the wall for 15 to 18 feet; a chain ran along the southerly edge of this strip of beach separating the beach area from the rest of the park. Sand had been deposited south of the wall so that the area behind the wall was level with it; from time to time sand was placed on the lake bottom near the wall in the swimming area because the bottom was mucky and rocky. There was a lifeguard's chair on the beach at the midpoint of the swimming area; the chair was attached to concrete slabs, the front slab being adjacent to the wall.

The pier at the east end of the swimming area abutted the retaining wall but was not attached to it. It was supported by

pilings driven into the earth next to the wall and by additional pilings at intervals along its length. A floating raft was located approximately 20 feet to the northwest of the north end of the pier; there was a diving tower on the raft and a diving board on the north end of the pier.

Swimmers entered or left the water by way of the retaining wall or the pier; there was no particular point designated for ingress or egress. Children played upon the wall and people walked upon it. There was evidence that people did at times make shallow dives from the wall. There was a dispute whether there was a rule against diving from it. There were no signs indicating the depth or warning swimmers against diving from the wall, and no barrier to prevent it. There was testimony that it was obvious that the water was fairly shallow in the vicinity of the wall, and that a trained person could safely make a shallow-type dive into two feet of water, but that such a dive could be dangerous to an untrained person.

Plaintiff had first entered the water by diving from the end of the pier. Later he and his companions had rested ashore. Plaintiff and a friend had a race to re-enter the water. The friend succeeded in diving safely from the wall into the shallow water. Plaintiff dove so that his head struck bottom about eight feet out from the wall, where the water was about two and one-half feet deep.

In order for a place to be a "public building" it must be a "structure," and must be used "as a place of resort, assemblage, lodging, trade, traffic, occupancy, or use by the public or by 3 or more tenants." [2] In order to be a "public building," a structure must have "some aspects of similarity to a building as that term is commonly understood." [3]

This court has held that a pier containing a bench, a diving board, and an observation tower erected by a village for the

---

[2] Sec. 101.01 (12), Stats.

[3] *Ball v. Madison* (1957), 1 Wis. (2d) 62, 66, 82 N. W. (2d) 894.

use of its residents, was a "structure," used as a place of resort, assemblage, occupancy and use by the public, and was therefore a public building.[4] It is evident from the opinion on the earlier appeal in this case that we considered the retaining wall could be part of a public building only because it was alleged that it together with bathhouse, concession building, pier, and lifeguard stand were a single structure, and because the exterior parts of a building, such as porches, platforms, and steps of a public building are now by statute to be considered a part of the building.[5] The condition disclosed by the evidence is far different. It is now clear that the wall is not a part of any building, and that although it has been constructed by man, it is not a "public building," under the safe-place statute.

Steps in a park leading from a roadway down a bluff to a beach have been held not to be a "public building," [6] although the statutory definition of public building has since been expanded. A public ball-playing field has been held not to be a "structure" nor "public building" even though soil had been brought in as fill.[7]

It is apparent that plaintiff is not claiming any defect in the structure or maintenance of the wall itself. Rather he is claiming that its presence made the swimming area unsafe because inexperienced people might attempt to dive from it and were not warned against nor prevented from doing so. Although we have held that a municipal swimming pool may be a "structure" and "public building," [8] we conclude that a

---

[4] *Feirn v. Shorewood Hills* (1948), 253 Wis. 418, 421, 34 N. W. (2d) 107.

[5] *Rogers v. Oconomowoc, supra,* p. 633, footnote 1.

[6] *Weiss v. Milwaukee* (1955), 268 Wis. 377, 381, 68 N. W. (2d) 13.

[7] *Hoepner v. Eau Claire* (1953), 264 Wis. 608, 614, 60 N. W. (2d) 392.

[8] *Flesch v. Lancaster* (1953), 264 Wis. 234, 237, 58 N. W. (2d) 710.

public swimming and beach area along the shore of a lake do not constitute a "structure" nor a "public building" even though artificially developed by constructing a retaining wall at the water's edge and dumping sand behind the wall and on the lake bottom in front of it.

2. *Is the beach a "place of employment?"* Sec. 101.01 (1), Stats., defines "place of employment" as a place where an industry, trade or business or related operation is carried on "and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit, . . ." Defendant city employed lifeguards to perform service at the beach. Plaintiff points out that although the city's recreational activity is not carried on for gain or profit, the employees do earn a gain or profit. Plaintiff contends that the definition of place of employment applies because the employees work for gain, and asks us to change our previous construction that the absence of the profit motive on the part of the city prevents the place being treated as a place of employment.

We expressly decided on the earlier appeal that "Plaintiff's conclusion that these facilities constitute a place of employment cannot be sustained."[9] In so holding we followed a statutory construction of long standing[10] that it is the profit motive of the employer to which the statute refers, not to that of the employee. We have recently reaffirmed the same construction.[11] We are not persuaded that plaintiff's construction should now be adopted.

3. *The duty to furnish safe employment.* Sec. 101.06, Stats., requires that "Every employer shall furnish employ-

---

[9] *Rogers v. Oconomowoc, supra,* p. 631, footnote 1.

[10] *Waldman v. Young Men's Christian Asso.* (1938), 227 Wis. 43, 46, 277 N. W. 632; *Cegelski v. Green Bay* (1939), 231 Wis. 89, 90, 285 N. W. 343; *Hoepner v. Eau Claire, supra,* p. 611, footnote 7.

[11] *Haerter v. West Allis* (1964), 23 Wis. (2d) 567, 127 N. W. (2d) 768; *Niedfelt v. Joint School Dist.* (1964), 23 Wis. (2d) 641, 127 N. W. (2d) 800.

ment which shall be safe for the employes therein . . ." The statute later provides that the employer shall furnish a place of employment which shall be safe for employees therein and frequenters thereof, and imposes requirements with respect to the safety of methods and processes. Plaintiff contends that even if the beach was not a place of employment, there was a breach of the statutory duty to provide safe employment. We do not readily perceive how the presence of the wall and the shallow water beyond it made the lifeguards' employment unsafe. In any event we have held that the statutory duty to furnish safe employment (unlike the duty to furnish a safe place of employment) runs to employees but not to frequenters such as plaintiff.[12]

4. *The jury verdict of no negligence on the part of defendants.* The city relied on municipal immunity from liability not predicated upon the safe-place statute. This accident occurred before abrogation of the doctrine of municipal immunity. Plaintiff claimed the city had waived its immunity by reason of the form of its insurance policy.[13] Defendant Houtz, the recreation director of the city, claimed he could not be found negligent because his duties required the exercise of discretion and judgment, and because of an asserted principle that he could not be held liable for errors in performing functions of that type.[14]

It will be unnecessary to pass upon those defenses if the jury finding of no negligence can be sustained and if such finding was not affected by error.

The circuit court considered that any possible negligence of the city or Houtz would, under the circumstances, consist

---

[12] *Niedfelt v. Joint School Dist., supra,* footnote 11.

[13] *Marshall v. Green Bay* (1963), 18 Wis. (2d) 496, 498, 118 N. W. (2d) 715. But see *Koenig v. Milwaukee Blood Center, Inc.* (1964), 23 Wis. (2d) 324, 334, 335, 127 N. W. (2d) 50.

[14] See *Wasserman v. Kenosha* (1935), 217 Wis. 223, 258 N. W. 857.

of failing to warn swimmers of the shallowness of the water near the wall. We agree that the question put to the jury: Whether defendants were negligent with respect to giving warning of the depth of the water, was adequate. There was testimony, including admissions by plaintiff, tending to show that it was obvious that the water was shallow. People commonly stepped into and out of the water from the wall. The jury could properly find that warnings were not required in the exercise of due care for the safety of swimmers.

5. *Board of health publication.* Plaintiff contends that the jury should have been instructed as to so-called "rules" of the state board of health, or that these rules required a finding of negligence as a matter of law. The "rules" appear to have been a 1937 publication of recommendations. We are unable to find that they have the force of law. They set forth the minimum safe depth of water for diving from platforms of various elevations. The beach and retaining wall in this case do not constitute a diving platform. We do not consider these "rules" applicable to the situation.

6. *Motion for mistrial.* After the verdict, plaintiff moved for a mistrial on the ground that two jurors withheld information pertinent to their qualifications as jurors. The husband of one juror had been president of the village of Lac La Belle from 1949 to 1962. Another juror had previously served for many years on the county board and as bailiff. Plaintiff apparently asked questions on the *voir dire* with respect to the service of any prospective juror as an employee or officer of a governmental body. The questions on *voir dire* were not recorded by the reporter. Plaintiff claims his questions were broad enough to call for prospective jurors to disclose past governmental employment of themselves or members of their families, as well as present connections. The form of these questions is in dispute. The circuit court denied the motion as well as other motions after ver-

dict made by the plaintiff. Evidently the circuit court was satisfied, from its own recollection of the proceedings, that the questions had not called for the disclosures of past associations, that there had been no concealment, and that the fact of past association in county affairs by one juror and in village office by the husband of another was not a sufficient basis for setting aside the verdict in the interest of justice.

7. *Lack of opinion by the circuit court.* It is evident that significant issues of law were argued before the circuit court as well as here on appeal. We would have preferred that the circuit court set forth its thinking in an oral or written decision. We recognize the burden under which all courts labor, but consider it desirable in the interests of justice that trial courts record their disposition of significant legal issues. The process of recording one's reasoning tends to produce more careful and thorough analysis, thus helping to avoid error. A well-reasoned opinion of a trial judge may at times persuade losing counsel that an appeal will be fruitless, thus reducing unnecessary appeals. If an appeal is taken, the trial judge's analysis of the issues is most helpful in reaching a sound decision here.

*By the Court.*—Judgment affirmed.