WITTKA and husband, Appellants, v. HARTNELL and another, Respondents.*

No. 40. *Argued March 2, 1970.—Decided March 31, 1970.*
(Also reported in 175 N. W. 2d 248.)

---

* Motion for rehearing denied, with costs, on June 2, 1970.

376

For the appellants there were briefs by *Merten, Connell & Sisolak* of Milwaukee, and oral argument by *Walter L. Merten.*

For the respondent Earl Hartnell there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Phillip E. Crump* of counsel, all of Milwaukee, and oral argument by *Mr. Crump.*

For the respondent Donverly Realty, Inc., there was a brief by *Kluwin, Dunphy, Hankin & Hayes* of Milwaukee, and oral argument by *Gerald T. Hayes.*

HEFFERNAN, J.

## 1. *The Wittka appeal*

Questions of the court directed at counsel during oral argument elicited the information that the plaintiff-appellants made no post-trial motions in the trial court prior to this appeal. An examination of the record confirms this. Accordingly, absent a showing of a patent miscarriage of justice, the plaintiffs have no right to the appellate review of the issues raised in their brief. The recent case of *Jonas v. Northeastern Mut. Fire Ins. Co.* (1969), 44 Wis. 2d 347, 171 N. W. 2d 185, reviewed the application of the rule of *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 80 N. W. 2d 380. We pointed out that the failure of an aggrieved party to move for a new trial following a directed verdict forecloses him from the right to appellate review. That rule is applica-

ble here. In *Jonas* we reiterated the position of this court that, even though appellate review were foreclosed, this court in a proper case could, under sec. 251.09, Stats., nevertheless examine the issues if the interest of justice so demanded. In the instant case the appellants have not urged that we entertain an appeal in the interest of justice. Our own independent review of the record does not convince us that there has been a miscarriage of justice or that the evidence adduced at trial and the applicable law would dictate that the plaintiffs should have won in the court below. *Savina v. Wisconsin Gas Co.* (1967), 36 Wis. 2d 694, 704, 154 N. W. 2d 237. Under sec. 251.09 we decline to exercise our discretion to further review the appellants' case, and the judgment below must be affirmed.

### 2. *The Donverly appeal*

The defendant Donverly appeals from the judgment of the trial court. The record reveals that appropriate post-trial motions were made and, accordingly, the issues presented in Donverly's brief are properly before this court on appeal.

On this appeal Donverly asserts that the parking lot where Helga Wittka fell is not a place of employment within the safe-place statute, that it was not the employer of Steffens, and that, furthermore, the patch of ice which occasioned the fall was not an actionable defect under the safe-place statute. In addition to there being actionable negligence by safe-place statute standards, two elements must be established before a location qualifies as a "place of employment" under the safe-place statute: Business must be carried on, and a person must be employed on the premises. The definition of a "place of employment" apears in sec. 101.01 (1), Stats.:

". . . every place, whether indoors or out or underground and the premises appurtenant thereto where

either temporarily or permanently any industry, trade or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade or business, is carried on, and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit . . . ."

It appears undisputable that the function of Donverly Realty, Inc., at the site of this town house complex was to conduct a portion of its business. The business of Donverly Realty, Inc., was, in part at least, to manage property for the owners. A portion of its business was conducted by managing the real estate in question for the consideration of six percent of its monthly rental income.

In *Cross v. Leuenberger* (1954), 267 Wis. 232, 65 N. W. 2d 35, 66 N. W. 2d 168, the distinction is made between one who owns property only for investment purposes and one whose operation or management of the property requires a substantial and habitual devotion of time and labor to the management operation.

In *Gupton v. Wauwatosa* (1960), 9 Wis. 2d 217, 101 N. W. 2d 104, 102 N. W. 2d 401, we pointed out that the mere ownership of an apartment building was not sufficient to establish that its owner was operating a business. That case pointed out, however, that a corporation whose arrangements oblige it to maintain property and to make necessary repairs and whose very existence is dependent upon income derived from this type of property management is necessarily a business.

This is clearly the function of Donverly in relationship to the property owned by Hartnell. Although not all of Donverly's business was on these very premises, it is undisputable that a portion of its business was conducted here. By its agreement with the owner, it expressly agreed to make minor repairs, to take care of the cutting of grass and shoveling of snow, and to receive complaints in regard to the town house complex.

Jack Silbermann, the president of Donverly, testified that this was the essence of the agreement entered into with the owner, Hartnell. It cannot be said that Donverly was not engaged in its usual and habitual course of business in connection with this real estate.

The question, of course, remains whether Donverly was an employer at the town house complex and whether Ronald Steffens was its employee. Subsections 3 and 4 of sec. 101.01, Stats., define these terms:

"(3) The term 'employer' shall mean and include every person, firm, corporation, state, county, town, city, village, school district, sewer district, drainage district and other public or quasi-public corporations as well as any agent, manager, representative or other person having control or custody of any employment, place of employment or of any employe.

"(4) The term 'employe' shall mean and include every person who may be required or directed by any employer, in consideration of direct or indirect gain or profit, to engage in any employment, or to go or work or be at any time in any place of employment."

Silbermann was clearly the agent of Donverly, and he testified that in respect to this property he supervised Steffens, authorized expenditures, and had control over the details of his work. The same statement of facts makes it clear that Steffens was the employee subject to the direction of Donverly.

The appellant Donverly recognizes that the effect of the trial judge's conduct, both in permitting Steffens to be called adversely and by the language of the memorandum decision, is to implicitly find Steffens to be an employee of Donverly. This finding is not against the great weight and clear preponderance of the evidence. In *Employers Mut. Liability Ins. Co. v. Industrial Comm.* (1939), 230 Wis. 670, 676, 284 N. W. 548, this court stated:

"We have repeatedly held that the principal test for determining whether one performing service for another

is an employee or an independent contractor is the right to control the details of the work. . . .

"It is quite immaterial whether the right to control is exercised by the master so long as he has the right to exercise such control."

In this case the testimony of Silbermann made it eminently clear that not only did Donverly have the right to control Steffens' work but also exercised such right.

It also appears clear that the $65 per month rent credit which was granted by Donverly is adequate to satisfy the requirement of the statute that the work be "in consideration of direct or indirect gain or profit."

The continuing arrangement between Donverly and Steffens constituted a contract of hire and this contract contemplated regular employment at the agreed upon rate of compensation for an indefinite period of time.

We see no error in the trial court's failure to submit the question of Steffens' employment status to the jury. Donverly cites *Bond v. Harrel* (1961), 13 Wis. 2d 369, 108 N. W. 2d 552, for the proposition that employment status is a question of fact for the jury. While it is undoubtedly true that employment status is a question of fact, it need not be resolved by the jury if the testimony leads to but one conclusion. In effect, the trial court ruled that the undisputed facts established as a matter of law that Steffens was an employee of Donverly and not an independent contractor. Under the state of the record, this determination was a proper one. The facts relative to the relationship between Steffens and Donverly were not in dispute, and even were the matter submitted to the jury, a review of the transcript indicates that the evidence would have been insufficient to support a jury's finding that Steffens was not the employee of Donverly.

Even though it was clear that the town house complex itself was a place of employment, did the adjacent parking lot come under the purview of the safe-place statute

in that respect? We conclude that it indubitably does. Common sense would dictate the conclusion that a parking lot at a residential complex is such an integral part of the complex itself that it would be encompassed in the overall classification of the town house complex as a place of employment. Such analysis, although logically leading to that conclusion, need not be indulged in, for sec. 101.01 (1), Stats., provides that a place of employment also includes "premises appurtenant thereto." Premises appurtenant to a place of employment are discussed in *Schwenn v. Loraine Hotel Co.* (1961), 14 Wis. 2d 601, 111 N. W. 2d 495; *Werner v. Gimbel Brothers* (1959), 8 Wis. 2d 491, 99 N. W. 2d 708, 100 N. W. 2d 920; *Filipiak v. Plombon* (1962), 15 Wis. 2d 484, 113 N. W. 2d 365; and *Paepcke v. Sears, Roebuck & Co.* (1953), 263 Wis. 290, 57 N. W. 2d 352. In each of these cases the rationale holding that property is "appurtenant thereto" is dependent upon "sec. 101.01 (3), Stats. [which provides that] an employer is a person or entity having control or custody of a place of employment." *Schwenn v. Loraine Hotel Co.* (1961), 14 Wis. 2d 601, 606, 111 N. W. 2d 495. It is apparent that the defendant Donverly had dominion and control over the parking lot for the purposes of the safe-place statute.

Donverly's last contention is based upon the theory that the ice and snow conditions in the parking lot did not constitute an actionable defect. While such language is used in some cases decided by this court (*see* citations appearing in *Schwenn v. Loraine Hotel Co., supra*), we deem that the concept of actionable defect is inappropriate in connection with a violation of the safe-place statute involving a place of employment.

In cases arising under the highway defects statute, inasmuch as the statutory liability there imposed was in derogation of the common-law and the statutory right to recovery depended upon a finding of a "defect" under sec. 81.15, this court was obliged to engage in a discus-

sion and determination of what was a defect and what magnitude a defect must attain before it can be actionable. Such a concept is not warranted in the application of the safe-place statute. The question under the safe-place statute is merely whether the defendant was *negligent* in not maintaining a premise in as safe a condition as the nature thereof would reasonably permit. This concept of negligence does not require that there be ice formations or ruts of a certain depth, but merely that there be negligence, that is, as we said in *Cirillo v. Milwaukee* (1967), 34 Wis. 2d 705, 711, 150 N. W. 2d 460, that a " 'harm must be reasonably foreseen as probable by a person of ordinary prudence.' " For a finding of negligence under the safe-place statute, it must be shown that the employer had actual or constructive notice of the temporarily unsafe condition. *Merriman v. Cash-Way, Inc.* (1967), 35 Wis. 2d 112, 150 N. W. 2d 472.

In the instant case there was undisputed evidence of actual knowledge by Donverly's custodian caretaker. He fell on the ice the day before, and he salted the area on that day. The next day he noticed that the area was again slippery, but he made no effort to correct the condition. There was actual notice of the hazard, and under these circumstances there was negligence under the standards of the safe-place statute in that the premises were not as safe as their character would reasonably permit.

It should not be overlooked that in the instant case the trash containers were placed in the parking lot and of necessity had to be used for pedestrian traffic as well as vehicular. The statute imposes a duty upon an employer to anticipate what the premises will be used for and to inspect them to make sure that they are safe for such use. *Wisconsin Bridge & Iron Co. v. Industrial Comm.* (1959), 8 Wis. 2d 612, 618, 99 N. W. 2d 817.

*By the Court.*—Judgments affirmed.