GOULD and another, Respondents, v. ALLSTAR INSURANCE COMPANY and another, Appellants: LIEN and another, Defendants.

*No. 470. Argued June 5, 1973.—Decided June 29, 1973.*
(Also reported in 208 N. W. 2d 388.)

For the appellants there was a brief by *Hippenmeyer, Reilly & Arenz* of Waukesha, and oral argument by *Richard S. Hippenmeyer.*

For the respondents there was a brief and oral argument by *S. A. Schapiro* of Milwaukee.

HEFFERNAN, J. Plaintiff's complaint charged defendant, Denoon Beach, Inc., with common-law negligence and also with violating its duties under the safe place statute, sec. 101.06, Stats. (renumbered sec. 101.11 by ch. 185, Laws of 1971). The defendant concedes that the defendant's beach was open to the public for the defendant's profit, that the plaintiff paid a fee for admission to the area, and that the location was "a place of employment" under the safe place statute. It is, accordingly, undisputed that under the facts Gould was a "frequenter" at a place of employment. Sec. 101.06, Stats. 1969, provided:

"**Employer's duty to furnish safe employment and place.** Every employer shall furnish employment which shall be safe for the employes therein and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe."

While, under the common law, Gould would be an "invitee," the distinction between licensees and invitees in this case is irrelevant. Richard V. Campbell, *Recent Developments of Tort Law in Wisconsin,* p. 17 (1969), points out:

"Where our Safe Place Statute applies, this distinction [common law] is eliminated. If a person is a user of a place of employment or a public building, as defined by the Safe Place Statute, he is an employee, a frequenter or a trespasser. Frequenters are not subdivided. All receive the same protection. *Mlynarski v. St. Rita's Congregation,* 31 Wis. 2d 54, 142 N. W. 2d 207 (1966)."

The safe place statute does not create a new cause of action, but it does establish an increased standard of care, the violation of which is negligence. *Baker v. McDel Corp.* (1971), 53 Wis. 2d 71, 79, 191 N. W. 2d 846; *Widell v. Holy Trinity Catholic Church* (1963), 19 Wis. 2d 648, 650, 121 N. W. 2d 249.

Under the common law, premises were merely required to be reasonably safe; but under the safe place statute, liability is imposed if the premises are not kept as free from danger as the nature of the place will reasonably permit. *Krause v. Menzner Lumber & Supply Co.* (1959), 6 Wis. 2d 615, 622, 95 N. W. 2d 374.

*Bunce v. Grand & Sixth Building* (1931), 206 Wis. 100, 104, 238 N. W. 867, points out that the statute imposes a duty beyond the duty imposed by the common law.

Since the duty on the defendant in this case is higher than that imposed by the common law, there need be no inquiry into the legal basis of liability of an occupier of land to an invitee. If there is liability under the safe place statute, the judgment must be affirmed. The ultimate question, even in the face of the higher safe place duty, remains the same. It is "whether the defendant was *negligent* in not maintaining a premise in as safe a condition as the nature thereof would reasonably permit." *Wittka v. Hartnell* (1970), 46 Wis. 2d 374, 385, 175 N. W. 2d 248.

On this appeal it is not argued that the jury was improperly instructed. It is for the jury to determine, under proper instructions, whether the safe place statute has been complied with or violated. *Zehren v. F. W. Woolworth Co.* (1960), 11 Wis. 2d 539, 544, 105 N. W. 2d 563; *Heiden v. Milwaukee* (1937), 226 Wis. 92, 102, 275 N. W. 922.

In the instant case, where the trial judge specifically approved the jury's findings, it is only necessary to consider such testimony as would sustain the verdict; and,

if there is any credible evidence which under any reasonable view would support the jury's findings, the verdict is final. *Seitz v. Seitz* (1967), 35 Wis. 2d 282, 289, 151 N. W. 2d 86; *Kosnar v. J. C. Penney Co.* (1959), 6 Wis. 2d 238, 240, 94 N. W. 2d 642.

The evidence is clear and undisputed that the end of the pier, some 100 feet from shore, was located in a position where it was unsafe to dive. Moreover, the plaintiff relies on the contention that the defendant was negligent in failing to erect a warning sign or in some way warn its customers of the dangers involved in diving from the end of the pier. There is undisputed evidence that the defendant knew of the danger of diving from the pier, that there had been a warning sign at an earlier time, and that a new warning sign had been painted, was in the possession of the defendant, and had not been placed on the pier.

In view of the nature of the use to which the pier was likely to be put, the premises were not safe. There was evidence from which the jury could conclude that the premises were not kept as free from danger as the nature of the place would reasonably permit.

The defendants do not really argue that they were not negligent. In their brief they address themselves to two points. The essence of their first argument is that they had no duty to warn plaintiff of the danger because the danger was obvious to him. He admitted that he could not see the lake bottom.

Principal reliance is placed upon a recent case by this court, *Scheeler v. Bahr* (1969), 41 Wis. 2d 473, 164 N. W. 2d 310. In that case, a social guest, a licensee, at a private home was severely injured when he dived into shallow water from the end of a pier on Lake Waubesa. That case came to us on an appeal from an order which sustained the defendant's demurrer. The complaint alleged that a recent rainstorm had muddied

the water and had obscured any view of the bottom, preventing any ascertainment of the depth of the lake at that point. We stated, at page 480, that the complaint must fail because, "as a matter of law the plaintiff must be held to knowledge and appreciation of the risk likely to be encountered by plunging headfirst into the un-plumbed depths of the murky lake." We concluded in that case that the "opaqueness of the water was in itself a notice of danger." (P. 477) Accordingly, there was no obligation upon the owner for his failure to give an actual warning.

The *Scheeler Case,* however, does not control the instant case. The relationship between Scheeler and his host was that of licensor-licensee. There is no duty on the part of the licensor to make the premises safe for the licensee. He had the duty only of disclosing to his social visitor the existence of a trap—a known but concealed danger. Once that obligation was discharged, either by the host's warning or by the guest's seeing a noticeable and observable danger, the duty is satisfied and there can be no liability. In *Scheeler,* we found it unnecessary to go into the question of the plaintiff's contributory negligence, since the defendant had breached no duty and was not negligent. There was an actual and obvious danger, and once that was apparent, under the physical circumstances of the case, whether or not the defendant was negligent under other possible legal relationships was immaterial. The duty owed to Scheeler was the lowest of the common-law duties which an occupier of land owes to one on his premises with permission. The duty owed in the instant case is the higher statutory duty, and the duty of warning in the instant case is merely a part of the statutory obligation of the occupier of the place of employment to: ". . . do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters."

Had there been a warning sign in the instant case, it would not necessarily have discharged the duty of Denoon Beach to make the place safe. The question would clearly be one for the jury in terms of plaintiff's contributory negligence. Where a safe place violation is alleged, giving of a warning may vitiate a plaintiff's cause of action by reason of his own contributory negligence, but it does not necessarily satisfy the land occupier's duty.

A similar argument was raised in *Umnus v. Wisconsin Public Service Corp.* (1952), 260 Wis. 433, 51 N. W. 2d 42, where it was argued that the plaintiff should clearly have been aware of an open and obvious danger. The court disposed of that argument, pointing out at page 436, "We do not find that the statute distinguishes between obvious and hidden dangers."

The defendant in *Umnus* argued also that the open and apparent danger presented a question of contributory negligence. The court agreed but pointed out that this was a matter of defense and had nothing to do with the defendant's duty under the safe place statute, although it clearly had relevance in respect to the plaintiff's obligation to use reasonable care for his own safety.

Accordingly, we conclude that *Scheeler* offers no solace to the defendants in this case. The plaintiff's faulty appraisal of the depth of the water herein was contributory negligence, a matter of defense only, and would prevent the plaintiff's recovery only if the jury were to find his negligence greater than that of the defendant.

We should also point out that, aside from the different legal relationships in *Scheeler* and this case, there were factual differences. The plaintiff here testified that he looked at the water before diving and that it appeared to be three or four feet deep, deep enough for a safe dive of the type he attempted.

In the case of *Rogers v. Oconomowoc* (1964), 24 Wis. 2d 308, 128 N. W. 2d 640, a common-law negligence case not under the safe place statute, the jury was asked

whether the city had been negligent in failing to warn of shallow water in proximity to a retaining wall at a swimming beach. The court concluded that the question was properly for the jury but upheld the jury's verdict on the ground that there was evidence that the plaintiff had been swimming in that very spot before and had actual knowledge of the danger.

The jury's conclusion that both the plaintiff and the defendant in the instant case were negligent is correct. It found, under proper instructions, in respect to the defendant that the premises were not as safe as the nature of the place would reasonably permit. In respect to the plaintiff, it found that he had failed to exercise the care and caution that an ordinarily prudent person would use under the circumstances.

The defendants' second principal argument is, assuming negligence of both plaintiff and defendant, that the negligence of the plaintiff exceeded that of the defendant Denoon Beach, Inc. We do not agree. In considering the apportionment of negligence, it is necessary to consider the circumstances of this accident as revealed by the testimony.

The plaintiff stated that, although he made an observation of the water, he assumed that the place was safe for swimming and diving and he gave consideration to the fact that this was a public beach held open, for a fee, for that very purpose. It is reasonable to conclude from the evidence that, in a public, profit-making beach of this type, the plaintiff had less of a duty to look for dangers than he would at a beach where there was no inducement to swim and to dive. In this respect the situation is not unlike the department-store cases, where this court has held that the primary focus of a customer's attention is to examine the merchandise and not to consider hazards that would lie in his path and which he would not reasonably expect to be there. We stated in

*Zehren v. F. W. Woolworth Co.* (1960), 11 Wis. 2d 539, 542, 543, 105 N. W. 2d 563, that under the safe place statute:

"A person is not bound as a matter of law to see absolutely every defect or danger in his pathway which is plainly observable nor to remember the existence of every defect or hazard of which he has knowledge . . . . A customer is only required to act as a reasonably prudent person under the circumstances."

We are satisfied that the plaintiff's duty to act as a prudent person was affected by the commercial nature of the place where he was swimming. He could reasonably expect to be in a place of physical safety. It is clear, however, that his observation was defective, and the jury properly found him negligent.

As in negligence cases generally, the apportionment of causal negligence under the safe place statute is a question peculiarly within the province of the jury. *Young v. Anaconda American Brass Co.* (1969), 43 Wis. 2d 36, 45, 168 N. W. 2d 112; *Frankovis v. Klug & Smith Co.* (1957), 275 Wis. 156, 162, 81 N. W. 2d 495. Only in unusual cases will this court overturn a jury verdict on the apportionment of negligence. *Smith v. St. Paul Fire & Marine Ins. Co.* (1973), 56 Wis. 2d 752, 755, 203 N. W. 2d 34.

Under the evidence most favorable to the verdict, the jury might well have concluded that the appearance of depth at the end of the pier was deceptive, and that, although the plaintiff's observation was defective, under the circumstances of the place in which he was a frequenter, the causal negligence was primarily due to the defendant's failure to have the premises as safe as the use to which they were put would reasonably permit.

There is ample evidence to sustain the verdict. The court correctly instructed the jury and made the proper conclusions of law on motions after verdict.

*By the Court.*—Judgment affirmed.

ROBERT W. HANSEN, J. *(dissenting)*. The plaintiff, an experienced swimmer and diver, walked to the end of the pier, extending out into the shallow waters of Lake Denoon. He looked into the water for fifteen to twenty seconds to determine whether it was prudent for him to dive off the end of the pier. The water, he testified, was "somewhat riled and a little polluted" so that he could not see the bottom of the lake. A number of people, including small children, were standing in the shallow water at the end of the pier. The plaintiff testified that he noticed other people in the water, but did not notice that any were standing upright in the water, or that any were small children. He explained that he had been "concentrating his attention" on the water, not the people in the water. He backed up 15 or 20 feet and made a "slow run" to the end of the pier, making a shallow dive into the water. His head struck the bottom, and he sustained grievous injuries. Clearly, he was negligent, as a matter of law, in diving into water when he had been unable to see the bottom of the lake to determine the depth of water at the end of the pier.

As to the breach of duty owed by the defendants, the majority opinion locates it in a violation of the safe place statute (sec. 101.11, Stats.) which requires that a "place of employment or public building" be maintained so "as to render the same safe." No claim is made of unsafe construction or placement of the pier. Plaintiff's claim is that defendants were negligent in failing to erect a "No Diving" sign or, in some other way, warning their beach patrons of the dangers involved in diving off the end of the pier into the shallow water. Where the hazard alleged was the shallowness of the lake, the writer would not see the statute, applying only to "place of employment or public building" as applicable. However, considering a patron of a swimming beach as an invitee, rather than as a frequenter of a "place of employment

or public building," does not lower the standard of care devolving upon defendants. This court has stated the invitor-invitee standard of care to be:

". . . a landowner is liable for injuries to an invitee caused by reason of the unsafe condition of the premises known to the owner and which he negligently suffers to exist and of which the injured invitee has no notice or knowledge. . . ." *Schlicht v. Thesing* (1964), 25 Wis. 2d 436, 440, 130 N. W. 2d 763.

Under the safe place statute, as to an employee or frequenter, the defendants would be under a duty only "to warn the plaintiff of dangers of which the defendant had knowledge or should have discovered in the exercise of reasonable care unless the danger was, or should have been obvious to the plaintiff." (*Marshall v. Miles* (1972), 54 Wis. 2d 155, 162, 194 N. W. 2d 630.) Likewise, there is no duty to warn of an obvious hazard in an invitor-invitee situation. In a case involving a baby-sitter not warned of the dangers attending operation of an electric stove, applying the invitor-invitee test, this court said: "Such dangers as are involved in the use of the electric stove would all be apparent to even a sixteen-year-old girl and there could be no duty to instruct." *Szep v. Robinson* (1963), 20 Wis. 2d 284, 292, 121 N. W. 2d 753. Diving off a pier into water of unknown depth would appear to present a hazard as obvious as operating an electric stove. However, in a later case, where the relationship between the defendant and the plaintiff is that of invitor-invitee, this court has held a defendant to be under a duty ". . . to use reasonable care in discovering such dangerous condition and, notwithstanding the obvious or apparent nature thereof, may have been under a duty to warn the plaintiff. . . ." (*Marshall v. Miles, supra,* at page 162, citing *Voeltzke v. Kenosha Memorial Hospital* (1969), 45 Wis. 2d 271, 172 N. W. 2d 673.) So it is only under this case and under the invitor-

invitee standard (not under the safe place statute standard) that the defendants' failure to warn of an apparent and obvious danger even arguably could constitute an actionable breach of duty.

The plaintiff having come upon the premises of the defendants as an invitee, they owed to him " 'the alternative duty of either having his premises in a reasonably safe condition or of giving the invitee adequate and timely warning of latent and concealed perils which are known to the owner but not to the invitee.' " (*Midthun v. Morgan* (1967), 35 Wis. 2d 203, 206, 207, 150 N. W. 2d 367, quoting with approval *Schlicht v. Thesing, supra.*) The duty to warn of "latent and concealed perils" certainly does not describe the situation here present; the claim of negligence must rest solely on failure to maintain premises in a reasonably safe condition by failing to warn of an obvious and apparent danger: *i.e.,* diving off a pier into water of unknown and unascertainable (due to murkiness) depth. This, the only causative negligence on the part of defendants here possible, is minimized by the presence of adults and small children standing in the water near the end of the pier. Several witnesses so testified, and their testimony is not controverted by the statement of plaintiff that he observed only swimmers since he made clear that he was "concentrating his attention" on the water, not those swimming or standing in it. It is clear that he did not see because he did not look. The contribution of the absence of a "No Diving" sign to the injuries sustained is here lessened by the fact that every person, particularly the small children, standing in the lake near the end of the pier was a clear warning as to the shallowness of the lake at the end of the pier.

On the other hand, the contribution of the causative negligence of the plaintiff to the accident is maximized by the fact that he dove into the water after being unable

to see the bottom of the lake from the end of the pier. Whether he misjudged the shallowness of the lake or the shallowness of his dive is not controlling. What cannot be shunted aside is that he testified that, when he stood at the end of the pier, before attempting the dive, the water was "somewhat riled and a little polluted" so that he could not see the bottom of the lake. There is no way for even an experienced diver to determine the depth of the water if he cannot see the bottom. The opaqueness of the water was in itself a notice of danger. In a licensor-licensee case where "the murkiness of the water obscured the view and concealed the hazard of a bottom only three feet below the surface," this court firmly held: "[The] very murkiness upon which the plaintiff relies should signal a danger that should be comprehended by any person, except one of the most tender years." (*Scheeler v. Bahr* (1969), 41 Wis. 2d 473, 478, 164 N. W. 2d 310.) In determining the contribution of plaintiff's negligence to the injuries sustained, as well as on his being negligent at all, it follows that "as a matter of law the plaintiff must be held to knowledge and appreciation of the risk likely to be encountered by plunging headfirst into the unplumbed depths of the murky lake." (*Id.* at page 480.)

The writer, joined by Mr. Justice LEO B. HANLEY, would conclude that the jury was required to find the plaintiff negligent and entitled to find the defendants negligent. However, it was not entitled to find that the percentage of causative negligence attributable to the defendants was greater than the percentage of causative negligence attributable to the plaintiff. As a matter of law, the negligence of the plaintiff in "plunging headfirst into the unplumbed depths of the murky lake" was greater than the negligence of the defendants in not warning against diving into shallow water, particularly where the adults and children standing at the end of

the pier provided exactly such warning of the shallowness of the lake. While the facts warrant a finding of negligence on the part of both plaintiff and defendants, they compel a finding that plaintiff's negligence was greater than that of the defendants. So we would reverse and remand with direction to grant defendants' motion for a directed verdict dismissing plaintiff's complaint.

I am authorized to state that Mr. Justice LEO B. HANLEY joins me in this dissent.