Daniel DAVENPORT, Plaintiff-Appellant,†

v.

Gail A. GILLMORE, and Citizen Security Mutual
Insurance Company, a foreign corporation,
John G. Fox, d/b/a Fox Brothers
Construction, Richard W. Fischer, d/b/a
Fischer Sand & Gravel Company, and/or
Fischer Excavating & Grading Company,
Defendants-Respondents,

EMPLOYERS INSURANCE COMPANY OF
WAUSAU, a domestic corporation, Defendant.

Court of Appeals

*No. 87–1641. Argued July 21, 1988.—Decided September 14,
1988.*

(Also reported in 431 N.W.2d 701.)

† Petition to review denied.

498

On behalf of the plaintiff-appellant there were briefs and oral argument by *David Allen Hansher* of *Deutch, Hansher & Burns* of Milwaukee.

On behalf of the defendants-respondents, there were briefs by *William J. Katt* and *Emile H. Banks, Jr.* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee; briefs by *James D. MacDonald* of *MacDonald & Koss* of Union Grove; briefs by *Timothy J. Strattner* of *Schellinger & Doyle, S.C.* of Brookfield. There was oral argument by *Emile H. Banks, Jr., James D. MacDonald,* and *Timothy J. Strattner.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J. Daniel Davenport appeals from three orders and resultant summary judgments dismissing his negligence claims against Gail Gillmore and her insurer, Citizen Security Mutual Insurance (Gillmore), Fox Brothers Construction (Fox) and Fisch-

er Sand and Gravel Company (Fischer). Davenport contends that Gillmore, Fox and Fischer were negligent in the design and construction of an artificially improved pond into which Davenport dove and was injured. In addition, he asserts that Gillmore was negligent in failing to discover and warn him of a dangerous condition in the pond. The undisputed facts in the record lead us to conclude that there is no evidence to support Davenport's negligent construction claim. We also conclude that Gillmore is absolved from any potential liability due to the open and obvious nature of the danger Davenport encountered. Therefore we affirm the orders and summary judgments granted by the trial court.

This action arises out of a diving accident which occurred in Gillmore's backyard pond and rendered Davenport a paraplegic. While at a college graduation party given by Gillmore's nephew, Scott Gillmore, Davenport participated in a volleyball game located next to Gillmore's swimming pond. One of the players kicked the ball into the middle of the pond and Davenport and several others raced into the pond to retrieve it. Davenport ran into the pond from the beach area, and when the water reached mid-thigh he took a shallow running dive and struck his head on the bottom of the pond, causing permanent paralysis.

At his deposition, Davenport stated that when he dove he could not see the bottom of the pond, that he had never swam in this area of the pond before, and that he did not know how deep the water was two feet in front of him. He also testified that his head struck the bottom of the pond and not "a rock or anything." Davenport was twenty years old and an experienced swimmer who had captained his high school varsity swim team for three years.

A few hours earlier Davenport had been swimming in the pond some five to ten feet to the right of the area where the accident occurred. He stated that the incline was very steep in that area and that the water went from ankle depth to about mid-shoulder depth within six feet from the shore. Davenport is six feet and one inch tall. He did not dive at that time, but only submerged himself and then got out of the water within five minutes. This was Davenport's only excursion into the pond prior to the dive resulting in his injuries.

The pond is owned by Gillmore. Thirteen years earlier, Gillmore hired Fox and Fischer to dredge the pond, build a retaining wall around it and put in a beach and a pier. Gillmore testified that her purpose was to make the pond suitable both for recreation and to support aquatic life. Prior to the improvements, the pond was approximately the same size, but had never been used for swimming.

Gillmore stated that she did not give Fox or Fischer specific instructions as to the improvements, other than that she wanted it to remain as similar as possible to the original pond so that it would fit into the landscape. There was also an understanding that the pond would slope from the shoreline into the center, to the greatest depth of approximately ten feet. Gillmore stated that after the improvements the pond was consistent all the way around and there were no drop-offs. The pond is primarily spring-fed, but a couple of times during the summer Gillmore runs a hose from the house and runs it into the pond to bring up the water level.

Gillmore did not personally supervise the party on her premises at which Davenport was injured. Nor

were there any signs posted warning quests as to any unsafe diving areas.

Davenport filed suit against Gillmore, Fox and Fischer under strict liability and ordinary negligence theories. Gillmore moved for summary judgment. The court granted her motion. Thereafter, Fischer and Fox also moved for summary judgment and the court granted these motions. Separate orders and judgments were entered in favor of each moving party. Davenport appeals the dismissal of his negligence claims against all three defendants.

In reviewing the trial court's grant of summary judgment, we must independently apply the standards of sec. 802.08(2), Stats., in the same manner as did the trial court. *Schaller v. Marine Nat'l Bank,* 131 Wis. 2d 389, 394, 388 N.W.2d 645, 648 (Ct. App. 1986). We review decisions on summary judgment *de novo. United States Fidelity & Guar. Co. v. Goldblatt Bros.,* 142 Wis. 2d 187, 190, 417 N.W.2d 417, 419 (Ct. App. 1987).

The initial step of summary judgment methodology requires a determination of whether the complaint states a claim and, if so, whether the answer puts the complaint's allegations at issue. *In re Cherokee Park Plat,* 113 Wis. 2d 112, 116, 334 N.W.2d 580, 582–83 (Ct. App. 1983). Here there is no dispute that Davenport's complaint states a claim for relief and the defendants' answers put Davenport's allegations at issue.

With this having been established, we will first address Davenport's allegation that Gillmore was negligent in her design and construction of the pond. Gillmore supported her motion for summary judgment with an affidavit incorporating excerpts of

503

Davenport's deposition testimony. This testimony reveals that Davenport's earlier wading in the pond showed that it sloped down toward the center from the shoreline. He testified that when he dove he did not hit a "rock or anything." Gillmore's deposition testimony is that the pond uniformly slopes down toward the center from the shoreline. To make a *prima facie* case for summary judgment, a defendant must show a defense which would defeat the claim. *Id.* at 116, 334 N.W.2d at 583. Gillmore's summary judgment evidence refutes Davenport's claim of negligent design. We conclude from this evidence that Gillmore had made out a *prima facie* case for summary judgment.

We must thus examine the opposing affidavits submitted by Davenport for evidentiary facts and other proof to determine whether a genuine issue exists as to any material fact, or reasonable conflicting inferences may be drawn from the undisputed facts, and therefore a trial is necessary. *Id.* In opposition, Davenport submitted an affidavit incorporating excerpts of his deposition essentially setting forth what has already been noted above. We note that on review we are not limited to the excerpts of deposition testimony incorporated or referenced by the affidavits, but may review the complete deposition because it was available to the trial court at the time the motion was made. *See Schaller,* 131 Wis. 2d at 394, 388 N.W.2d at 648; *see also United States Fidelity,* 142 Wis. 2d at 190, 417 N.W.2d at 419.[1]

---

[1] Davenport also presented excerpts of deposition testimony from Gail Gillmore and Dawn Gillmore. These witnesses, however, do not provide any information relative to Davenport's claim of negligent design and, therefore, are not relevant on this point.

We see nothing in Davenport's deposition which raises a genuine issue as to any material fact bearing upon his claim that Gillmore negligently designed the pond. All the evidence supports the contrary—that the pond was not negligently designed.[2] Gillmore testified that the pond gradually slopes toward the center and that this was the understanding conveyed to Fischer and Fox when they improved the pond. Davenport acknowledged that he hit the bottom when he took his dive and that he did not strike any other foreign object. Davenport has failed in meeting the requirement that he "must set forth specific facts showing that there is a genuine issue for trial." Sec. 802.08(3), Stats. Summary judgment was properly granted to Gillmore on this claim.

Next, we examine Davenport's claims that Fox and Fischer were negligent in their design and construction of the pond. In support of their motions for summary judgment, Fischer and Fox submitted an affidavit incorporating an excerpt of the deposition testimony of Davenport's liability expert, George E. Lawniczak, Jr. In response to the query "the bottom line is ... [y]ou're not critical of how the pool itself was constructed," Lawniczak stated, "[n]o, there's nothing wrong with this place as a place in which to cool off, to do swimming, with an exception of failing to buoy off the [deep] water for non-swimmers." Lawniczak apparently felt that the only construction flaw was a failure to install buoys to warn non-swimmers of deep water. This fact is immaterial to this case where the plaintiff is shown to be an experienced swimmer and

---

[2] We note that we do not consider the later testimony of Davenport's own expert that the pond was not negligently designed since this evidence was not before the trial court at the time it ruled on Gillmore's summary judgment motion.

where the purpose of buoys is to warn of deeper water for swimming, not diving purposes. Hence, the relevant facts indicate that Davenport's own expert found nothing wrong with the pond's construction.

Davenport's failure to submit other depositions or affidavits setting forth specific facts of negligent construction showing a genuine issue for trial entitles Fox and Fischer to summary judgment.[3] *Cherokee Park Plat,* 113 Wis. 2d at 116, 334 N.W.2d at 582–83. We affirm the orders and resultant judgments dismissing Davenport's claims against Fox and Fischer.

Finally, we turn to Davenport's claim that Gillmore was negligent in failing to supervise, discover and warn him of a dangerous condition in the pond. Although not entirely clear from his arguments, Davenport apparently contends that the shallowness of the water in the area he dove presented a dangerous condition of which Gillmore knew and failed to warn or supervise. The trial court granted summary judgment in favor of Gillmore, finding that the danger Davenport encountered when he dove was open and obvious, thus abrogating Gillmore's duty to supervise and warn.

In Wisconsin, landowners owe a duty of ordinary care toward all persons who come upon their property

---

[3]Davenport argues that we may not affirm the trial court based on Lawniczak's testimony. He contends that there is nothing in the judgments or orders to indicate that the trial court relied on Lawniczak's testimony when rendering its decision. Whether the trial court failed to rely on Lawniczak's testimony is irrelevant. Our review is *de novo,* and we may consider the entire record the trial court had before it at the time the motion was made. *See United States Fidelity & Guar. Co. v. Goldblatt Bros.,* 142 Wis. 2d 187, 190, 417 N.W.2d 417, 419 (Ct. App. 1987).

with their consent. *Antoniewicz v. Reszczynski,* 70 Wis. 2d 836, 857, 236 N.W.2d 1, 11 (1975). Although *Antoniewicz* abrogated the distinction between licensees and invitees, we still recognize the open and obvious danger exception to the duty of ordinary care. *Waters v. United Stated Fidelity & Guar. Co.,* 124 Wis. 2d 275, 281, 369 N.W.2d 755, 758 (Ct. App. 1985). The landowner's duty of ordinary care is not breached if the dangerous condition is "open, unconcealed, and obvious." *Treps v. City of Racine,* 73 Wis. 2d 611, 617–18, 243 N.W.2d 520, 523 (1976).

Davenport tenders several arguments on appeal, all of which we find unpersuasive. First, he relies on *Waters,* and asserts that the artificial nature of the pond takes it out from the open and obvious danger exception. As we noted in *Waters,* the open and obvious danger exception applies to both natural and artificial conditions.[4] *Waters,* 124 Wis. 2d at 277–78 n.

[4]This court in *Waters* drew together and relied on two distinct exceptions to the duty of ordinary care: (1) the "open and obvious" danger, and (2) conditions of purely natural origin. *Waters v. United States Fidelity & Guar. Co.,* 124 Wis. 2d 275, 280–81, 369 N.W.2d 755, 758 (Ct. App. 1985). While we stated in *Waters* that purely natural bodies of water have long been included in the category of an open and obvious danger, we did not conclude that these two theories must be applied simultaneously. *See id.* at 281, 369 N.W.2d at 758; *see* W. Prosser, *Law of Torts,* pp. 354–56 and 394–95 (4th ed. 1971). A landowner may be found not to have breached the duty of ordinary care solely on the basis that the danger was so open and obvious that the danger itself served as a warning to the injured party. *See generally Colip v. Travelers Ins. Co.,* 141 Wis. 2d 363, 415 N.W.2d 525 (Ct. App. 1987); *Treps v. City of Racine,* 73 Wis. 2d 611, 243 N.W.2d 520 (1976); *Schlicht v. Thesing;* 25 Wis. 2d 436, 130 N.W.2d 763 (1964). Likewise, it has been held that in Wisconsin a landowner can be absolved from the duty to fence or guard a condition on his or her land solely on the basis that the condition is of purely natural origin. *See generally*

1, 369 N.W.2d at 756; *see also Treps,* 73 Wis. 2d at 617–18, 243 N.W.2d at 523.

Davenport's second contention is that he had reason to believe that he could safely dive, based on his experience a couple of hours before when he waded into the pond. Because the water was midway up his shoulders at the spot "five feet over," Davenport argues that there is a material issue of fact as to whether his belief was reasonable.

Davenport knew he was in a pond that had some type of slope toward the center, as opposed to a graded swimming pool. He acknowledged that he had only been in the pond once before for five minutes, that when he dove the water was only midway up his thighs, that he could not see the bottom and he did not know how deep the water was two feet in front of him. Knowing this, he nonetheless chose to dive into what he testified was an unknown depth.

The shallowness of the water at the area in which Davenport dove was the "danger" causing Davenport's injuries. Davenport was standing mid-thigh deep in water when he dove, so the shallowness of the water was open and obvious to him. A landowner may be found not to have breached the duty of ordinary care solely on the theory that the danger was so open and obvious that the danger itself served as a warning to the injured party. *See generally Colip v. Travelers Ins. Co.,* 141 Wis. 2d 363, 415 N.W.2d 525 (Ct. App. 1987); *Treps,* 73 Wis. 2d 611, 243 N.W.2d 520 (1976). We conclude that Davenport's running dive into mid-thigh opaque water presents a danger so open and obvious that Gillmore is absolved of any attendant duty of ordinary care.

*Fiel v. City of Racine,* 203 Wis. 149, 233 N.W. 611 (1930); *Klix v. Nieman,* 68 Wis. 271, 32 N.W. 223 (1887).

Davenport's prior experience of wading in an adjacent area of the pond where the water was deeper is immaterial because when taking his running dive Davenport *knew* he was in shallower water. Davenport would have us conclude that because an adjacent area was deeper and presumably safe for a running dive, the same presumption holds true for a different area which undisputedly reveals itself to be only mid-thigh deep. The strain of this logic is self-evident.

Davenport urges that his faulty appraisal of the depth of the water is a question for the jury. *See Gould v. Allstar Ins. Co.,* 59 Wis. 2d 355, 364, 208 N.W.2d 388, 393 (1973). He also contends that because the pond had been held out for swimming he had the right to assume it was also safe for diving. We disagree. The duty owed in *Gould* was the higher statutory duty owed under the safe place statute, sec. 101.11, Stats. *Id.* at 363, 208 N.W.2d at 392. Additionally, in *Gould* there was an inducement to both swim and dive due to the existence of a pier off of which Gould dove and was injured. *Id.* at 362, 365, 208 N.W.2d at 391–92, 393. While Gillmore's pond did have a pier, Davenport did not dive off of it. He chose to dive from thigh-deep water, which is anything but an inducement to dive. Just because there is a pier or even a diving board in one part of the body of water, it does not follow that an entire body of water is safe for diving.

We conclude that the trial court properly dismissed Davenport;s claims and entered summary judgments in favor of Gillmore, Fox and Fischer.

*By the Court.*—Orders and judgments affirmed.