BUEROSSE and wife, Appellants, v. DUTCHLAND DAIRY
RESTAURANTS, INC., Respondent.

*No. 570 (1974). Submitted on briefs March 4, 1976.—
Decided April 7, 1976.*
(Also reported in 240 N. W. 2d 176.)

For the appellants the cause was submitted on the brief of *John P. Buckley* of Waukesha.

For the respondent the cause was submitted on the brief of *John R. Hoaglund, Jr.,* and *Gibbs, Roper & Fifield* of Milwaukee.

ROBERT W. HANSEN, J.  This appeal deals with (1) the duty of the restaurant owner to its patrons; (2) the duty of the patron as to her own safety; and (3) the comparison of the negligence of each as determined by the jury.

*Duty of restaurant owner.*  The trial court instructed the jury that it was the duty of the restaurant owner to maintain the floor in question as safely as the nature

of the place would reasonably permit, but that, for a finding of negligence, it was required that the restaurant owner be warned "either by actual notice of the alleged defect in time to take reasonable precautions to remedy the situation which caused the accident, or by constructive notice of the alleged defect because it had existed for such a length of time before the incident that the defendant, or its agents, in the exercise of reasonable diligence, should have discovered it in time to take reasonable precautions to remedy the situation which caused the incident."

In arguing that no element of time is involved as to constructive notice, the plaintiffs rely upon the recent case of *Steinhorst v. H. C. Prange Co.*[1] There the plaintiff slipped on shaving foam which came from an aerosol can on a self-service men's cosmetic counter. Our court held that, whether the shaving foam got on the floor accidentally or through negligence of a shopper or intentionally by "boys playing around," such conduct should have been foreseen by the store owner.[2] Holding that this sort of self-service operation called for periodic inspection, our court found no evidence that the aisle had been checked for safety, and found the evidence sufficient to put the defendant on constructive notice that its method of operation could reasonably create an unsafe condition.[3] The plaintiffs would have us extend this holding as to a special fact situation to include the normal operation of a restaurant business.

However, in a later case, our court specifically refused so to do. In that later case, *Shoemaker v. Marc's Big Boy*,[4] the plaintiff wife fell near the carry-out counter in a restaurant. She testified that there was an oily

[1] (1970), 48 Wis. 2d 679, 180 N. W. 2d 525.
[2] *Id.* at page 684.
[3] *Id.* at page 684.
[4] (1971), 51 Wis. 2d 611, 187 N. W. 2d 815.

substance, which she compared to chicken fat, on the floor which caused her to fall. In a safe-place action, the jury found neither plaintiffs nor defendants negligent and our court upheld the verdict or jury finding. In so doing, our court held that it was apparent that the jury could have found that there was no evidence to show that the defendants had either actual or constructive notice of any foreign substance on the floor, and stated: "There was no evidence from which the jury could have determined the length of time that any slippery substance was present on the floor. . . ."[5] That is also true of the case now before us. In *Shoemaker* our court also stated: "There was also evidence from which the jury could have concluded that reasonable precautions were taken to make sure that the floor was free from slipperiness."[6] That is also true of the case before us now. Applying *Shoemaker,* the closest question here is whether there is any basis in this record for finding the defendant causally negligent. That issue is not raised, and we stop at holding that the trial court's instructions to the jury as to the requirement of actual or constructive notice to the restaurant owner were entirely correct.

*Duty of restaurant patron.* The trial court instructed the jury that the plaintiff wife "had a duty to use ordinary care for her own safety and protection, and to that end to observe the floor referred to in the evidence, its immediate surroundings, and all other conditions surrounding her while walking from the restaurant, and the dangers, if any, which were open and obvious to her if she was using reasonable care and caution for her own safety and protection. . . ." The full instruction on the duty to look where she was going was taken from the standard instructions as to duty of a plaintiff frequenter

[5] *Id.* at pages 615, 616.
[6] *Id.* at page 615.

in a safe-place statute case.[7] Challenging the existence of an obligation of plaintiff to look where she was walking, plaintiffs rely on this language in the *Steinhorst Case:* "The displays of merchandise in modern stores are so arranged and are intended to catch the customer's attention and divert him from watching the floor. . . . [I]t is unreasonable to expect a person in a retail store to use the same degree of lookout as he would on a public street."[8] This is not to be read as meaning that a wall poster or menu list posted absolves a restaurant patron from the duty to observe floor conditions before proceeding. It means only that evidence that a special display had diverted the attention of a frequenter in a store or restaurant is relevant as to the standard of care of such frequenter. Thus where a plaintiff was focusing her attention on a glassware display at the time of her fall, our court held appropriate this instruction: "A person is not bound to see every hazard, especially if you are satisfied from the evidence that his attention is attracted by a display of merchandise in the store."[9] In the case before us there is no evidence that the attention of the plaintiff was in fact diverted to some special display at the time of her slipping. In fact, her testimony was that she was looking at her husband, not at the floor and not at any special display, at the time that she slipped on the lettuce. Instructions must be warranted by the evidence,[10] and here the instructions of the trial court as to the duty of this plaintiff to look where she was going

---

[7] Wis J I—Civil, Part II, 1902, entitled *"Safe Place Statutes: Negligence of Plaintiff Frequenter."*

[8] *Steinhorst v. H. C. Prange Co., supra,* footnote 1, at pages 685, 686.

[9] *Carlson v. Drews of Hales Corners, Inc.* (1970), 48 Wis. 2d 408, 415, 180 N. W. 2d 546.

[10] *West Bend Mut. Ins. Co. v. Christensen* (1973), 58 Wis. 2d 395, 398, 206 N. W. 2d 202.

were correct and were all that needed to be said as to her duty regarding her own safety.

*Comparison of negligence.* The jury here found the plaintiff wife to be 75 percent causally negligent, and the defendant restaurant to be 25 percent causally negligent. Seeking a new trial in the interest of justice,[11] the plaintiffs contend that this apportionment in effect places a greater duty on the plaintiff with respect to lookout and care for her own safety than it does on the restaurant owner under the safe-place statute. Our court has made clear that ordinary negligence can be compared with negligence founded on the safe-place statute.[12] Where such comparison is made it does not follow that conduct in violation of the safe-place statute necessarily contributes more to the result than the negligence deriving from breach of a common-law duty.[13] In fact, our court has held that " 'it is of no consequence whether the negligence was under the safe-place statute or common-law negligence.' "[14] Since it is here impossible to determine how the lettuce got on the floor or how long it was there, it cannot be said that the jury's apportionment of negligence is against the great weight of the evidence.[15] The trial court refused to interfere with the jury's apportionment of negligence, and we agree that on

[11] *See:* Sec. 251.09, Stats.

[12] *Lovesee v. Allied Development Corp.* (1970), 45 Wis. 2d 340, 346, 173 N. W. 2d 196, citing *Presser v. Siesel Construction Co.* (1963), 19 Wis. 2d 54, 119 N. W. 2d 405.

[13] *Id.* at page 346. *See also: Frederick v. Hotel Investments, Inc.* (1970), 48 Wis. 2d 429, 435, 180 N. W. 2d 562, and *Payne v. Bilco Co.* (1972), 54 Wis. 2d 424, 432, 195 N. W. 2d 641.

[14] *Id.* at page 346, quoting *Bruss v. Milwaukee Sporting Goods Co.* (1967), 34 Wis. 2d 688, 699, 150 N. W. 2d 337.

[15] *See: Pruss v. Strube* (1968), 37 Wis. 2d 539, 544, 545, 155 N. W. 2d 650, this court holding: "[A] new trial may be granted in the interest of justice because the verdict is against the great weight of the evidence. . . ."

this record the apportionment of negligence made by the jury is to be upheld.

*By the Court.*—Judgment affirmed, with costs to respondent.