BRONS, and husband, Plaintiffs-Appellants, v. BISCHOFF, and others, d/b/a B & B Enterprises, and another, Defendants-Respondents and Third-Party Plaintiffs: SCHWALBE, Third-Party Defendant.

Supreme Court

No. 76-646. Argued March 27, 1979.—
Decided May 1, 1979.
(Also reported in 277 N.W.2d 854.)

82

For the appellants there were briefs by *James R. Gass, Michael A. Mesirow* and *Kasdorf, Dall, Lewis & Swietlik* of Milwaukee, and oral argument by *Mr. Gass.*

For the respondents there was a brief by *James P. O'Neill, Douglas J. Carroll* and *Arnold, Murray, O'Neill & Schimmel* of Milwaukee, and oral argument by *James P. O'Neill.*

WILLIAM G. CALLOW, J.   This is an appeal from a judgment dismissing the complaint following a jury verdict attributing 60 percent of the negligence to Audrey Brons (plaintiff) who was injured in a fall on the defendants' premises. We affirm the judgment.

Plaintiff worked for Charles Loughrey, a shoe leather salesman, performing secretarial and general office duties. Loughrey's office suite consisted of three rooms, one of which he rented to H. H. Martin Company. The

offices were in a building owned by the defendants. Loughrey moved into these offices in October, 1972. To make them suitable for Loughrey's use, the defendants, through their building caretaker, Paul Schoos, hired Harry Schwalbe to do some remodeling which required the removal of a partition in the area which was to become the Martin office. No building permit was sought or issued. Attached to the partition were three sinks. After Schwalbe removed the partition, a hole remained in the concrete floor through which the pipes to the sinks passed. Schwalbe suggested to Schoos that he hire a plumber to remove the pipes, but the record is unclear concerning who actually removed the pipes and patched the floor during remodeling.

The hole, about 4 inches wide, 7 to 10 inches long, and 10 to 12 inches deep, was filled with grout which apparently settled, leaving a depression in the floor about a half-inch deep. A wall-to-wall carpet was stretched over the floor sometime in November or December, 1972.

The plaintiff noticed the depression in the floor on three occasions while vacuuming. She testified it became bigger and deeper; she called Schoos several times to report the condition, but Schoos did not return her calls. She vacuumed the week of the accident.

On March 16, 1973, plaintiff was collecting two coffee cups from the Martin office to rinse them out when she stepped onto the carpet covering the depressed area in the floor and fell. Mrs. Brons fell at about 12:20 p.m. and immediately phoned her husband who was out of his office, Loughrey's wife who was of no assistance, and Loughrey's Worker's Compensation insurance carrier who advised her to see a doctor. Mrs. Brons remained in the office until shortly before four o'clock, when her husband and Loughrey arrived. At trial she offered proof she suffered back injuries resulting from the fall.

Plaintiff and her husband began this action for damages against the owners of the premises and their in-

surer. The defendants impleaded Schwalbe. The court found that the plaintiff incurred medical and hospital expenses of $22,085.71; the jury set other damages at a total of $149,900. The jury found that Schwalbe was not negligent and attributed 25 percent of the causal negligence to the owners of the office building; 15 percent to the plaintiff's employer, Loughrey;[1] and 60 percent to the plaintiff. The court denied plaintiff's various post-verdict motions and entered judgment on the verdict, dismissing the complaint.

Plaintiffs raise five issues on appeal:

(1) Was the verdict supported by the evidence?

(2) Was the verdict perverse?

(3) Did the trial court err in refusing to allow the plaintiff to stand in the courtroom during the trial?

(4) Did the trial court err in receiving evidence of plaintiff's fall in the same office two months before the fall in question?

(5) Did the trial court err in failing to instruct the jury that in comparing the parties' relative negligence it should take into account the higher duty placed on the defendants under the safe-place statute, sec. 101.11(1), Stats.?

## I. SUFFICIENCY OF THE EVIDENCE

Plaintiff contends that there was no evidence supporting a finding of her causal negligence. The standard of appellate review of a judgment entered on a jury verdict was stated in *Roach v. Keane,* 73 Wis.2d 524 536, 243 N.W.2d 508 (1976), as follows:

"In general, of course, this court will view the evidence in the light most favorable to the verdict, and affirm if there is any credible evidence on which the jury could

---

[1] Loughrey could not be named a party defendant because of the exclusive remedy provision of the Wisconsin Worker's Compensation Act, sec. 102.03(2), Stats.

■■■■■■■

have based its decision, particularly where the verdict has the approval of the trial court. *Toulon v. Nagle* (1975), 67 Wis.2d 233, 242, 226 N.W.2d 480. The credibility of witnesses and the weight given to their testimony are matters left to the jury's judgment, and where more than one inference can be drawn from the evidence, this court must accept the inference drawn by the jury. *Valiga v. National Food Co.* (1973), 58 Wis.2d 232, 244, 206 N.W.2d 377; *Calero v. Del Chemical Corp., supra,* 68 Wis.2d at 508."

A review of the testimony discloses credible evidence to support the jury's attribution of 60 percent of the negligence to the plaintiff.

■

Plaintiff is 5'9" tall and weighed about 240 pounds on the date of the accident. About three weeks before the accident her foot slipped off a floor mat in the office, and she sprained her foot. She used two crutches for a period of time, then one, and during the week of the accident she gave up the crutch because it made her "so sore all over" she did not want to use it anymore. She said she walked in an upright rather than stooped position, but her foot was tender. In a statement made to her employer's Worker's Compensation insurance carrier, she said:

" 'I was limping with my foot wrapped, but not on crutches, and I was walking very carefully because the foot was very sore and I was being very careful because two weeks, I think it was two weeks on crutches was an awful strain on me, my arms, my legs, everything was aching, and I was walking very gingerly. So when I stepped into that hole it caught me completely by surprise and it kind of scared me, and maybe part of it was panic, I don't know.' "

She stated the reason she came to work in that condition was because she was alone at home. In reviewing the evidence, we conclude the jury could have found the plaintiff negligent in coming to work and walking about in her condition.

The jury could also have concluded the plaintiff was negligent in not avoiding the area of depression as she had been clearly aware of its existence for quite a long time.

Finally, the jury could have rested its finding in part on the plaintiff's account of her fall:

"*A.* Well, I was standing on Russ'es [sic] floor mat and being careful of my foot and knowing that I had tripped off of it once before, I looked down at my feet to see where I was positioned, and I stepped off of the mat onto the carpeting and then I stepped forward with my left foot and that's when I stepped into the depression.

"*Q.* And what happened as your left foot came down onto the carpeting?

"*A.* There was no solid flooring as I expected it to be. My foot went into this—it was no longer a giving. It was an actual depression or a hole in the floor. It threw me off balance. It startled me terribly. I was falling to the left into the two desks, and I was afraid I was going to break my hip and to avoid that, I twisted to the right and I fell on my knees and then toppled over onto my right side."

Plaintiff argues that the verdict is unsupportable in view of the safe-place statute presumption that the injury was caused by the violation of the statute. *See: Umnus v. Wisconsin Public Service Corp.,* 260 Wis. 433, 438, 51 N.W.2d 42 (1952). The safe-place statute's presumption of causation does not establish as a matter of law that the defendant's negligence was greater than the plaintiff's. *Buerosse v. Dutchland Dairy Restaurants,* 72 Wis.2d 239, 244, 240 N.W.2d 176 (1976); *Frederick v. Hotel Investments, Inc.,* 48 Wis.2d 429, 434–35, 180 N.W.2d 562 (1970). We conclude there is credible evidence supporting the verdict as approved by the trial court.

## II. *PERVERSITY OF VERDICT*

Plaintiff argues that the verdict is the result of passion, prejudice, or perversity. She contends that the perversity of the verdict is manifested in the jury's $10,000 award for past pain and suffering and failure to award the plaintiff's husband damages for loss of society and companionship. The general rule is stated as follows:

" 'where a jury has answered other questions so as to determine that there is no liability on the part of the defendant, which finding is supported by credible evidence, the denial of damages or granting of inadequate damages to the plaintiff does not necessarily show prejudice or render the verdict perverse. . . .' "

*Dahl v. K-Mart*, 46 Wis.2d 605, 613, 176 N.W.2d 342 (1970), quoting from *Sell v. Milwaukee Automobile Insurance Co.*, 17 Wis.2d 510, 519–20, 117 N.W.2d 719 (1962). The trial court denied a motion for a new trial finding that the verdict was not the result of passion, prejudice, and perversity. The trial court's determination is entitled to great weight. *Dahl, supra*. We approve the trial court's determination.

## III. *PLAINTIFF'S REQUEST TO STAND IN THE COURTROOM*

On the day of trial, defense counsel moved to prohibit Mrs. Brons "from leaning on the corner of the door over which is printed the word 'justice.' " He argued that plaintiff's continued standing for a week would prejudice the jury; he suggested that she be made to sit, and when she became uncomfortable, she could go into the corridor and walk around. Plaintiff's counsel responded that it was painful for the plaintiff to sit. He cited generally the reports of her treating physician. The court ruled that it was its policy not to allow standing in the courtroom and suggested that Mrs. Brons stand in a conference

room at the back of the courtroom with the door ajar. The court refused plaintiff's request for an explanation to the jury why she was not in the courtroom, believing such a statement would come close to commenting on the credibility of the evidence. As a result of the court's order that she could not stand in the courtroom, the plaintiff elected to stand in the conference room.

Plaintiff claims this arrangement violated her common law right to be present at her trial and effectively denied her constitutional right to a jury trial [*See:* Art. I, Sec. 5, Wis. Const.; sec. 805.01(1), Stats.] because she could not participate in the conduct of the trial. The general rule is that a party to a civil action has a right to be present at trial. 88 C.J.S. *Trial* sec. 40, at 99 (1955). However, the "general conduct of a trial is largely within the discretion of the judge presiding." *Dowd v. Palmer*, 245 Wis. 593, 596, 15 N.W.2d 809 (1944).

The trial court did not abuse its discretion in forbidding the plaintiff to stand at the rear of the courtroom. The record demonstrates that the court was solicitous of the plaintiff's well-being but was concerned that the jury would be unduly distracted by her standing. The jury had ample opportunity to observe the plaintiff, who testified from the witness chair. The court recessed about every half hour during the plaintiff's testimony to enable her to stand and walk about. The plaintiff in her postverdict motions said she could sit 30 to 40 minutes; she could have sat in the courtroom and asked for frequent recesses. Counsel for the plaintiff acknowledged that he did not need her at the counsel table. During the trial plaintiff did not advise the court that she had any difficulty hearing while in the conference room with the door open. The court noted in its ruling that it had no notice and had not seen any medical reports that Mrs. Brons was unable to sit. The plaintiff's alleged in-

ability to hear parts of the testimony because of noise from adjacent bathroom fixtures was not brought to the trial judge's attention during the trial and first appeared in an affidavit filed in support of her postverdict motions. We conclude the court's suggestion that the plaintiff either sit in the courtroom or stand in the conference room was a reasonable accommodation of the interests of all parties and was not a denial of the plaintiff's right to a trial by jury. We approve the trial court's refusal to instruct the jury concerning the plaintiff's absence from the courtroom under these circumstances.

## IV. *EVIDENCE OF A PRIOR FALL*

At trial there was evidence that the plaintiff fell at the office in January and tripped in February, 1973. Plaintiff claims it was error to receive evidence concerning these earlier incidents.

She detailed her February accident resulting in a sprain of her left foot. Defense counsel asked "Now, you had some tripping and falling from January 1 of '73 until the incident of March 16, '73 at the office, didn't you?" Plaintiff's lawyer objected on the ground that the question was vague and indefinite. The court overruled the objection, and defense counsel proceeded to cross-examine Mrs. Brons. She admitted she had tripped twice and described her fall in January. Plaintiff's counsel made no objection until defense counsel began to ask about the February incident when plaintiff's counsel objected to the relevancy of the testimony. Evidence of the January fall was properly received on the question of aggravation of a preexisting injury, and the objection based on vagueness and indefiniteness did not preserve the objection of relevancy raised on appeal. Evidence of the February incident was properly received as relevant to the plaintiff's negligence in walking with-

out assistance in a disabled condition on March 16 and on the question of aggravation of a preexisting injury.

## V. *JURY INSTRUCTIONS*

The trial court instructed the jury on the duty imposed on the defendants by the safe place statute and on the presumption of causation arising from its violation. The trial court followed this instruction with the comparative negligence instruction. That instruction included the following language:

"[Y]ou will determine how much or to what extent each person named in the question is to blame for the accident and considering the conduct of the persons named in the question considered as a whole, you will determine whether one made a larger, equal or smaller contribution than the others."

This is substantially similar to the instruction approved in *Lovesee v. Allied Development Corp.,* 45 Wis.2d 340, 173 N.W.2d 196 (1970). *Cf.*: Wis. J I—Civil, Part II, 1580. The plaintiff claims the comparative negligence instruction should have included the following language submitted in plaintiff's requested instructions:

"In answering the comparative negligence question, if you are to answer it, you should take into consideration that the defendants are the owners of a public building and Audrey Brons was a frequenter therein and consider and weigh the credible evidence bearing on the inquiries present in light of the fact that the defendants have a higher duty placed upon them by the Wisconsin Safe Place Law than the ordinary care duty placed upon the plaintiff."

This court rejected an identical claim in *Lovesee, supra* at 343–47. Plaintiff submits that the *Lovesee* holding ought to be reconsidered because "[t]o inform the jury of the differing standards of care without tying that information into the comparison of negligence instruc-

tion is sowing seed on barren ground" We do not agree.

The trial court instructed the jury on the parties' duties: the defendants' duty to maintain the floor as safe as the nature of the place permitted, and the plaintiff's duty to exercise ordinary care for her own safety. This court, citing *Lovesee* and other cases, recently said:

"Our court has made clear that ordinary negligence can be compared with negligence founded on the safe-place statute. Where such comparison is made it does not follow that conduct in violation of the safe-place statute necessarily contributes more to the result than the negligence deriving from breach of a common-law duty. In fact, our court has held that 'it is of no consequence whether the negligence was under the safe-place statute or common-law negligence.' " [Footnotes omitted.] *Buerosse v. Dutchland Dairy Restaurants, supra,* 72 Wis.2d at 244.

We conclude there was no error in the jury instructions.
*By the Court.*—Judgment affirmed.

COFFEY, J., took no part.