Robert MACI and Barbara Maci and Wisconsin Employers Insurance Company, Plaintiffs-Respondents,

v.

STATE FARM FIRE & CASUALTY COMPANY and Daniel L. Pues and Ingred G. Pues, Defendants-Appellants.

Court of Appeals

*No. 81–465. Submitted on briefs November 11, 1981.—*
*Decided December 23, 1981.*
(Also reported in 314 N.W.2d 914.)

For the defendants-appellants the cause was submitted on the briefs of *John E. Schapekahm* of *Petrie, Stocking, Meixner & Zeisig, S.C.,* of Milwaukee.

For the plaintiffs-respondents the cause was submitted on the brief of *John W. Strasburg,* of Milwaukee.

Before Decker, C.J., Moser, P.J., and Randa, J.

RANDA, J. This is an appeal from a judgment entered in favor of the plaintiffs, Robert and Barbara Maci and their insurer Wisconsin Employers Insurance Company against the defendants Daniel and Ingred Pues and their insurer State Farm Fire and Casualty Company. The jury found the defendants 80% causally negligent in the maintenance of their premises as plaintiffs' landlords. Forty-six thousand eighty-nine dollars and seventy-five cents ($46,089.75) was awarded the plaintiffs for their personal injuries and damages. We affirm.

Plaintiffs, Robert and Barbara Maci rented the upper flat in a duplex owned by the defendants Daniel and Ingred Pues. There was an oral agreement between the parties that the plaintiffs would pay $125 a month for rent and that the defendants would cut the grass, shovel the snow and repair the buildings. There was no testimony as to the specific places which were to be shoveled. Daniel and Ingred Pues were divorced at the time of Robert Maci's accident. Ingred continued to live in the lower flat.

At 4:30 a.m., on February 15, 1977, Robert Maci left his upper flat to go to work. He walked to the back door of the garage, located on the west side of the garage, and unlocked the padlock. He proceeded through the garage, pushed open the two garage doors which swung out into the alley located east of the garage. He

removed his car and then walked back into the garage, pulled the two garage doors shut and walked out the west entrance and padlocked the door. On his way back to his car, Robert Maci fell in an area north of the garage, midway between the north side of the garage and a fence. As a result of this fall, Robert sustained injuries.

Robert Maci testified that he fell on packed snow and ice which was very slippery. He stated that this condition had been present continuously since around December 1, 1976. There was testimony that both Ingred Pues and Robert Maci had shoveled there once or twice preceding Robert's fall.

The plaintiffs brought suit against the defendants alleging that the defendants had breached their duty to exercise reasonable care to avoid creating an unreasonable risk of harm to their tenants, the plaintiffs. The jury found the defendants 80% causally negligent. The defendants appeal.

The following issues are raised on appeal:

1. Did the trial court err by failing to instruct the jury according to Wisconsin Jury Instruction—Civil 8020?
2. Did the trial court err by not finding Robert Maci at least 50% causally negligent in respect to his own injuries as a matter of law?
3. Did the trial court err by refusing to word the special verdict to reference the inquiry into defendants' negligence to the place where plaintiff fell?
4. Did the trial court err in permitting expert testimony by Charles Hagberg, a professional engineer?
5. Was there any bias, passion or prejudice on the part of the jury toward or against either party, requiring a new trial in this case?

## I. WISCONSIN JURY INSTRUCTION—CIVIL 8020

Beginning with *Antoniewicz v. Reszczynski,* 70 Wis. 2d 836, 236 N.W.2d 1 (1975), Wisconsin law governing

the extent to which an owner or occupier of land owes a duty of care toward persons on his premises with permission has undergone revision. In *Antoniewicz*, the Wisconsin Supreme Court abolished the distinctions between the different duties owed by an owner or occupier of land to a licensee or an invitee and imposed a general duty of ordinary care. *Id.* at 856–57, 236 N.W.2d at 11.

*Pagelsdorf v. Safeco Insurance Co. of America*, 91 Wis. 2d 734, 284 N.W.2d 55 (1979) involved the question as to whether landlords should continue to enjoy certain immunities from liability for negligence in maintaining the "demised" portion of the premises given over to the possession and control of a tenant. Our supreme court concluded that since today's leases are regarded as contracts and not as conveyances, it would be anomalous to require landlords to keep premises in good repair as an implied warranty in a lease, yet insulate them from tort liability for injuries caused by their failure to repair. *Id.* at 744, 284 N.W.2d at 60. The court concluded that a landlord owes his tenant and others on the premises with the tenant's consent, a duty to exercise ordinary care. *Id.* at 745, 284 N.W.2d at 61. The court noted that the same policies that supported their decision to abandon the distinction as to a land occupier's duty toward visitors in *Antoniewicz*, compelled them to abrogate the landlord's immunity toward his tenant and visitors. *Id.* at 742–43, 284 N.W.2d at 59–60.

The effect of *Antoniewicz* and *Pagelsdorf* was to increase a landowner's liability exposure by requiring him to exercise the duty of ordinary care to any person on his premises with permission. Defendants argue that by refusing to give requested Wis J I—Civil 8020, the trial court has broadened a landowner's duty yet another step by abrogating the public policy statements limiting the scope of ordinary care as exemplified in *Schlicht v.*

*Thesing*, 25 Wis. 2d 436, 130 N.W.2d 763 (1964). The court in *Schlicht* stated:

The owner of premises owes his invitee the alternative duty of either having his premises in a reasonably safe condition or of giving the invitee adequate and timely warning of latent and concealed perils which are known to the owner but not to the invitee. [Citation omitted.] *Id.* at 441, 130 N.W.2d at 767.

Wisconsin Jury Instruction—Civil 8020 states in part:

In the performance of his duty, a possessor of premises is required to exercise ordinary care to discover conditions or defects in the premises which expose a person to an unreasonable risk of harm. If any such unreasonable risk of harm existed and the possessor was aware of it, or if in the exercise of ordinary care he should have been aware of it, then it was his duty to either correct the danger or to warn such person of the existence of such danger.

The trial court based its refusal to give requested Wis J I—Civil 8020 on the grounds that it no longer reflected the law of Wisconsin. The trial court concluded that cases cited by the defendants related to concepts of invitee and invitor which are no longer applicable since *Antoniewicz*. The trial court stated that the Instruction Committee's notes indicated that Wis J I—Civil 8020 was only to be given in cases accruing before the *Antoniewicz* case. We disagree.

*Antoniewicz* went no further than to abrogate the distinction in duty owed by a possessor of land to invitees and to licensees. *Pagelsdorf* followed by abrogating the common law immunity of a landlord for an injury occurring on the premises leased to a tenant. *Pagelsdorf* did not address any public policy limitations on the parameters of a landlord's liability. The court limited its attention to the traditional immunities which would have foreclosed the jury from even considering the landlord's

negligence. *Pagelsdorf, supra,* at 741, 284 N.W.2d at 59. Neither *Antoniewicz* nor *Pagelsdorf* involved an open and obvious condition.

There is nothing in either *Antoniewicz* or *Pagelsdorf* to suggest that the "warning/open and obvious" decisions were being abrogated. There is nothing in the Instruction Committee's notes that would indicate that this instruction was to be given only in cases where the claims arose prior to *Antoniewicz.* [1]

We conclude that *Antoniewicz* and *Pagelsdorf* did not abrogate the "warning/open and obvious" limitations on liability. However, we find Wis J I—Civil 8020 to be an incomplete statement of the law in this area.

In *Treps v. City of Racine,* 73 Wis. 2d 611, 617–18, 243 N.W.2d 520, 523 (1976), our supreme court cited Restatement (Second) of Torts § 343A in support of its statement that the duty of ordinary care would not be breached if the dangerous condition was open and obvious. Section 343A (1) states: "(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

Comment 1, illustration 5 of § 343A gives an example similar to the facts of this case.

5. A owns an office building, in which he rents an office for business purposes to B. The only approach to the office is over a slippery waxed stairway, whose condition is visible and quite obvious. C, employed by B in the office, uses the stairway on her way to work,

[1] Wis J I—Civil 8020 is quoted and discussed in *Christians v. Homestake Enterprises, Ltd.,* 101 Wis. 2d 25, 303 N.W.2d 608 (1981). No reference is made by our supreme court that Wis J I —Civil 8020 no longer correctly states the law in Wisconsin.

slips on it, and is injured. Her only alternative to taking the risk was to forgo her employment. A is subject to liability to C.

The present case is a prime example of where such harm should have been anticipated despite the obviousness of the situation. Defendants had stated that they wanted the plaintiffs to lock the garage at all times be-cause Daniel Pues stored his motorcycle in there. The only way to lock the large doors of the garage was to place a large board across the inside joint of those doors. The only remaining means of egress was the west side door. The defendants knew or should have known that after backing his car out, Robert Maci would have to go back through the garage and padlock the door. In order to get back to his car, Robert Maci had to use the area north of the garage to travel between the garage and his vehicle. This is the area where he slipped and fell.

We conclude that Wis J I—Civil 8020 should have been given with the following modification to the last paragraph of 8020:

In the performance of his duty, a possessor of premises is required to exercise ordinary care to discover conditions or defects in the premises which expose a person to an unreasonable risk of harm. If any such unreasonable risk of harm existed and the possessor was aware of it, or if in the exercise of ordinary care he should have been aware of it, then it was his duty to either correct the danger or to warn such person of the existence of such danger. *However, where a known and obvious condition or defect exists on the premises and is unavoidable by the person on the premises, a possessor of premises is not relieved of liability for physical harm to said person arising from said defect or condition merely by warning such person of the condition or defect.* [Emphasis added to denote modification.]

Given the facts of this case, we hold that refusal to give such an instruction as Wis J I—Civil 8020 as modi-

fied was not prejudicial because it appears that the result would not have been different if the error had not occurred. *Lutz v. Shelby Mutual Insurance Co.*, 70 Wis. 2d 743, 750–51, 235 N.W.2d 426, 431 (1975). Accordingly, a new trial is not warranted. *Id.*

## II. APPORTIONMENT OF NEGLIGENCE

Pues contends that Maci, as a matter of law, must be found at least 50% negligent. Pues bases his contention on the fact that Maci had walked over the same icy condition at least 100 times prior to his fall.

The apportionment of negligence is a matter left to the jury and the jury's finding will be upheld if there is any credible evidence to support it. *Stewart v. Wulf*, 85 Wis. 2d 461, 471, 271 N.W.2d 79, 84 (1978). Our review of the record indicates that there is credible evidence to support the apportionment.

Walking around the north side of the garage from the west door of the garage to his car in the alley was the only means available to Robert Maci. The snow in the area had become packed down and slippery. A fresh layer of snow had just fallen covering the area. There were no lights that Robert Maci could use to illuminate the area. The condition of the rain gutter on the garage had allowed water to fall on the snow covered area north of the garage. Given these facts, it was not unreasonable for a jury to find the defendants 80% causally negligent and plaintiffs 20% causally negligent.

## III. SPECIAL VERDICT QUESTION

The defendants contend that the trial court ambiguously worded the first question of the special verdict.

The first question was stated as follows: "FIRST QUES-TION: At and just before the accident on February 15, 1977 was either Daniel or Ingrid [*sic*] Pues negligent with respect to maintaining their premises:" The defendants contend that the trial court erred in refusing to word the special verdict so as to limit the negligence inquiry to the place where Robert Maci actually did fall.

The trial court has discretion in framing the special verdict. We will not reverse the trial court's framing of the special verdict questions if the material issues of fact are addressed. *Bridgkort Racquet Club, Inc. v. University Bank,* 85 Wis. 2d 706, 712, 271 N.W.2d 165, 169 (Ct. App. 1978).

We conclude that although the special verdict question could have been framed in a more specific manner, the focus of the question was on the location where the injury occurred. Accordingly, we affirm.

## IV. EXPERT TESTIMONY

The trial court permitted professional engineer Charles Hagberg (Hagberg) to testify as to his conclusions that the uneven concrete surface north of the garage did not provide a safe walking surface and the deteriorated condition of the garage gutter caused an unsafe condition to exist. The defendants object to this testimony on two grounds: (1) the area testified to by Hagberg was not at the place where Robert Maci actually fell and (2) any specialized knowledge could not serve to assist the jury in understanding whether the area testified to was "safe." We reject both contentions.

The facts as to the place where Robert Maci fell were in dispute. Where facts are in dispute, this court on review will defer to the fact finding of the jury. *Roeske v. Diefenbach,* 75 Wis. 2d 253, 258, 249 N.W.2d 555, 558

(1977). There was sufficient evidence to conclude that Maci fell in an area inspected by Hagberg.

Whether an expert witness's opinion testimony is properly admitted depends upon whether the testimony would assist the jury in understanding the evidence or determining a fact in issue. Sec. 907.02, Stats; *Valiga v. National Food Co.*, 58 Wis. 2d 232, 251, 206 N.W.2d 377, 388 (1973). Whether such testimony should be admitted into evidence is a matter left to the trial court's discretion. *Valiga, supra,* at 251–52, 206 N.W.2d at 388. In the Judicial Council Committee's Note—1974 to sec. 907.02, Stats., it is stated: "With such a test expert testimony will usually be admissible and will only be excluded if superfluous and a waste of time."

We conclude that the trial court did not abuse its discretion in admitting such evidence.

## V. PERVERSITY OF THE VERDICT

The defendants argue that the verdict is a result of bias, passion and prejudice. The defendants contend that the perversity of the verdict is manifested by the insufficiency of the testimony to sustain the jury's awards of future pain, suffering and disability and loss of earning capacity together with the negligence apportionment.

The trial court denied defendants' motion for new trial, finding that the award was not the result of bias, passion or prejudice. "The trial court's determination is entitled to great weight." *Brons v. Bischoff,* 89 Wis. 2d 80, 89, 277 N.W.2d 854, 857 (1979). We approve the trial court's conclusion.

*By the Court.*—Judgment affirmed.