Chad WATERS, a minor, by his Guardian ad Litem,
James J. Murphy, Gilbert Waters and
Kathleen Waters, Plaintiffs-Appellants,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY,
a foreign corporation, and Alice Ann Mainus,
Defendants,

THRESHERMAN'S MUTUAL INSURANCE COMPANY, a Wisconsin corporation, Stanley J. Mainus, Great American Insurance Company, a foreign corporation, and James Mainus, Defendants-Respondents.

GREAT AMERICAN INSURANCE COMPANY and James Mainus, Defendants and Third-Party Plaintiffs,

v.

BADGER MUTUAL INSURANCE COMPANY,
Third-Party Defendant.†

Court of Appeals

*No. 84–573. Argued January 31, 1985.—Decided April 10, 1985.*
(Also reported in 369 N.W.2d 755.)

† Petition to review denied.

For the plaintiffs-appellants, there were briefs and oral argument by *James J. Murphy,* of *Gillick, Murphy, Gillick & Wicht,* of Milwaukee.

For the defendants-respondents, there were briefs and oral argument by *Margaret Grabowski,* of *Brennan, Steil, Ryan, Basting & MacDougall, S.C.,* of Janesville, on behalf of Stanley J. Mainus and Thresherman's Mutual Insurance Company; and there were briefs and oral argument by *Ted W. Tornehl,* of *Borgelt, Powell, Peterson & Frauen, S.C.,* of Milwaukee, on behalf of James Mainus and Great American Insurance Company.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.  In this appeal, we are asked to decide whether the Wisconsin Supreme Court's decision in *Antoniewicz v. Reszczynski,* 70 Wis. 2d 836, 236 N.W.2d 1 (1975), abolished all former Wisconsin case law involving the open and obvious danger exception to ordinary negligence. We hold that it did not. We conclude the *Antoniewicz* decision simply eliminated the distinction in duty owed by an owner or possessor of land to invitees and licensees. Therefore, we affirm the trial court's granting of the summary judgment since the landowners had no obligation to protect people coming upon a natural pond of water situated on their land.

In early April of 1982, ten-year-old Chad Waters and a friend went to the Mainuses' farm to retrieve a sled that was on the land. The land is bowl-shaped, and in the spring, melting snow creates a pond with a depth of up to six to ten feet in the middle.[1]  This pond had fro-

---

[1] The Waters attempt to distinguish between a natural pond and this pond, where it is alleged that some of the water is channeled to the area via a culvert running beneath the highway. The Mainuses

zen, and the sled was sitting on the ice. After several unsuccessful attempts to reach the sled,[2] Chad decided that he, being the lighter of the two, would walk out onto the ice and get the sled. As Chad neared the sled, he fell through the ice. He remained submerged for fifteen to twenty minutes and has suffered severe permanent brain damage.

Chad, by his guardian ad litem and his parents (the Waters), instituted this action against the owners of the land, James and Stanley Mainus. The complaint alleged that the Mainuses were negligent in failing to prevent injury on their land and that the children were lured onto the land by an "attractive nuisance." The trial court dismissed the action on a motion for summary judgment holding, as a matter of law, that the Mainuses could not be held liable for the child's injury. The Waters appeal.

The granting of a summary judgment is a question of law which we review *ab initio*. *See Grams v. Boss*, 97 Wis. 2d 332, 337, 294 N.W.2d 473, 476 (1980). An appellate court, when reviewing the granting of a summary judgment, must apply the standards set forth in sec. 802.08, Stats., in the same manner as the trial court.

refute this claim, stating there is no evidence that this culvert channeled any additional water into the area at the time of the accident. We do not perceive this dispute as forming a genuine issue of material fact as it has no bearing on the outcome. Early Wisconsin case law has held the open and obvious danger exception applicable to both natural and artificial streams and ponds. *See Emond v. Kimberly-Clark Co.*, 159 Wis. 83, 88, 149 N.W. 760, 761 (1914). *See also Kempen v. Green Bay & Mississippi Canal Co.*, 66 Wis. 2d 185, 224 N.W.2d 202 (1974) (spillway or canal overflow), and *Klix v. Nieman*, 68 Wis. 271, 32 N.W. 223 (1887) (excavation partially filled with water.

[2] The record indicates that the boys had attempted walking on the ice, but the ice broke and cracked under their weight.

*Heck & Paetow Claim Service, Inc. v. Heck,* 93 Wis. 2d 349, 356, 286 N.W.2d 831, 834 (1980). Summary judgment should not be granted unless the moving party demonstrates a right to judgment with such clarity as to leave no room for controversy. *Grams* at 338, 294 N.W.2d at 477.

The Waters allege that there are two potential grounds for recovery: (1) assuming Chad was an invitee/licensee, the Mainuses were negligent in failing to take precautions to protect him from hazards posed by the accumulation of water, or (2) assuming Chad was a trespasser, a sledding trail on the property was an artificial condition which lured him onto the land and, once on the land, he was injured. We hold that even assuming the veracity of these claims, the pond constituted an open and obvious danger which exempt the Mainuses from liability, and the *Antoniewicz* case has not abrogated this exemption.

*Antoniewicz* abolished the old distinctions that applied to licensees and invitees upon the land. *Antoniewicz* held that:

[t]he duty toward all persons who come upon property with the consent of the occupier will be that of ordinary care. . . . Under that test, as we have repeatedly stated, negligence is to be determined by ascertaining whether the defendant's exercise of care foreseeably created an unreasonable risk to others.

*Antoniewicz* at 857, 236 N.W.2d at 11.

It is conceded on this appeal that the Mainuses did not change or alter the condition of their land—they essentially left their land "as is." The Waters, relying on Wis J I—Civil 8020, assert that the performance of ordinary care includes care in discovering conditions or defects on the premises which expose a person to an unreasonable risk of harm. Once recognizing that the

pond was a dangerous condition, the Waters assert that it was the Mainuses' duty to either correct the danger or warn others of the existence of such danger. By failing to fence in the pond or post a warning sign, the Waters maintain that a question of material fact arises concerning the potential breach of this duty.

The Waters acknowledge the various pre-*Antoniewicz* cases that created an exception to the rule that there is a duty to warn of or correct a dangerous condition. These cases, known as the "open and obvious" danger cases, allow owners of natural ponds and the like the freedom from having to exercise ordinary care over those particular confines. The Waters insist, however, that the above-quoted language in *Antoniewicz* mandates that owners of these natural conditions must now exercise ordinary care with respect to them, thus overruling all the previous cases. The Waters argue that as long as an owner can foresee danger, *Antoniewicz* demands that the owner affirmatively act to prevent it. We disagree.

Owners and occupiers of land have a privilege to make use of the land according to their own desires. Owners, however, must have due regard for the interest of others who may be affected by it. This because the owner is in a position of control and is normally best able to prevent any harm to others. One important limitation to the responsibilities placed upon these owners has been the traditional rule that there is no affirmative duty to remedy conditions of purely natural origin upon the owner's land, although these conditions may be highly dangerous or inconvenient to others. *See Schilz v. Walter Kassuba, Inc.*, 27 Wis. 2d 390, 395, 134 N.W.2d 453, 456 (1965), *quoting with approval* Restatement (Second) of Torts § 339 at 83 (Tent. Draft No. 5). These natural conditions may reasonably be expected to be fully understood and appreciated as open and obvious

dangers. *Id.* This is why bodies of water have long been included in the category of an open and obvious danger. *See generally Fiel v. City of Racine,* 203 Wis. 149, 156–57, 233 N.W. 611, 614 (1930); *Klix v. Nieman,* 68 Wis. 271, 274, 32 N.W. 223, 224 (1887).

■

When *Antoniewicz* abrogated the distinction between licensees and invitees, it was merely affording the same protection to *any* person who came upon the land with consent, whether by invitation or otherwise. To all of these people, the owner now has an affirmative duty to protect them—not only against the dangers of which the owner knows but also against the dangers which, with reasonable care, the owner might discover. Whether as an invitee or licensee, however, the open and obvious danger exception still exists. As Prosser has stated, "there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent to him that he may reasonably be expected to discover them." W. Prosser, *The Law of Torts,* § 61 at 394 (4th ed. 1971) (footnotes omitted). Against such conditions, it may normally be expected that the visitor will protect himself. While it is doubtless true that the owner may, generally speaking, foresee danger in a natural pond, that danger is also readily ascertainable to the visitor. It is so open and so obvious that placing a burden of inspecting and improving primitive land upon the owner would not be fair. The owner is in no better position than the visitor.

■

We conclude that the open and obvious exception existed in Wisconsin before *Antoniewicz.* Nothing in *Antoniewicz* suggests or implies a departure from this exception.[3] As stated by our court in *Maci v. State Farm*

---

[3] We acknowledge that the general trend in recent years has been to reject the common-law exception concerning natural condi-

*Fire & Casualty Co.,* 105 Wis. 2d 710, 716, 314 N.W.2d 914, 918 (Ct. App. 1981), there is nothing in the *Antoniewicz* decision which abrogated the "warning/open and obvious" limitations on liability. Although the *Maci* court recognized that there are certain special situations where the possessor should anticipate the harm despite such knowledge or obviousness, the general rule that an owner or possessor of land is not liable to his invitees for physical harm caused to them by an open and obvious condition on the land is still the law in Wisconsin. *Id.* We conclude that prior to *Antoniewicz* there was no obligation to protect the invitee against open and obvious dangers that the invitee may reasonably be expected to discover and that post-*Antoniewicz* this rule remains the same.[4]

The Waters assert that even should the open and obvious danger exception still be the law in Wisconsin, the facts of this case fall within an exception to the open

tions. Of late, at least thirteen states and the District of Columbia have begun applying ordinary negligence principles in determining a possessor's liability for harm caused by a natural condition. *See Sprecher v. Adamson Companies,* 636 P.2d 1121, 1124 (Cal. 1981). Whatever the merits of this change, it is clear that *Antoniewicz* did not make Wisconsin one of those states. Such a sweeping change in the state common law would have generated a definitive and engrossing announcement by our highest court. We also point out that if a rejection of longstanding common law is to take place in this state, it will come from the supreme court; it will not come from the court of appeals. The function of plotting the general direction of the common law is reserved for the supreme court.

[4] The "warning/open and obvious" limitation has also been recognized to prevent recovery in "attractive nuisance" cases. *See McWilliams v. Guzinski,* 71 Wis. 2d 57, 63–64, 237 N.W.2d 437, 439–40 (1976) ; *Kempen v. Green Bay & Mississippi Canal Co.,* 66 Wis. 2d 185, 224 N.W.2d 202 (1974), and *Schilz v. Walter Kassuba, Inc.,* 27 Wis. 2d 390, 134 N.W.2d 453 (1965). Therefore, if the pond was an open and obvious danger on the land, then the attractive nuisance claim must fail as well.

and obvious danger situation. This exception is set forth in Restatement (Second) of Torts § 343A (1965), which was cited by both the *Maci* court and previous Wisconsin cases. Section 343A(1) states as follows:

A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.* [Emphasis added.]

The Waters point to deposition testimony which indicates that logs had frozen underneath the ice, giving a false impression that the pond was much shallower than it actually was. This, they claim, hid the actual depth of the pond. The hidden condition created a special risk of danger which the child was unlikely to discover or appreciate. We disagree. The presence of natural debris underneath the frozen ice does not constitute a factor creating a special risk that the child will not avoid the danger. Rather, natural ponds and streams frozen by the cold winter temperatures oftentimes lock in branches, fallen leaves and other debris. In *Fiel,* the supreme court held that the presence of a deep hole in an otherwise shallow pond did not constitute an exceptional circumstance. *Fiel* at 157, 233 N.W. at 614. This case is similar. Since it is a common condition of outdoor bodies of water in the winter and spring, we cannot say that the logs created some kind of dangerous condition or distracted the child's attention away from a dangerous condition.

*By the Court.*—Judgment affirmed.