Golden POIRIER and Bernadean Poirier, Plaintiffs-Respondents,

v.

PEOPLES STATE BANK, Defendant-Appellant.

Court of Appeals

*No. 87–0160. Submitted on briefs September 21, 1987.—
Decided November 21, 1987.*

(Also reported in 418 N.W.2d 631.)

For defendant-appellant there was a brief by *Kenneth Wm. Jost* and *Randi L. Osberg* of *Jost Law Offices,* of Chetek.

For plaintiffs-respondents there was a brief by *Daniel M. Smetana,* Altoona.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   Peoples State Bank appeals an order granting summary judgment in favor of Golden and Bernadean Poirier. The issue is whether Peoples State Bank possessed either a security interest in the Poiriers' certificate of deposit or properly exercised its right of setoff against those funds entitling it to refuse payment upon demand. Because we conclude that the bank had no valid security interest in the certificate of deposit and failed to properly exercise its right of setoff, we affirm the judgment.

The relevant facts are undisputed. In 1984, Shannon Poirier, Golden Poirier's son, renewed a business note with Peoples State Bank that Golden cosigned. This note was in the amount of $20,835.42 and specified a 1971 Ford pickup truck with a sanitary tank and pump as security for the loan. The note also granted the bank "a security interest and lien on any demand or savings account," and setoff rights against any deposit balances.

In September, 1985, Golden and his wife, Bernadean Poirier, acquired a "Time Saving Certificate" with the bank in the face amount of $13,751.08. The certificate designated Golden or Bernadean as the depositors and listed Golden's social security number in the upper left-hand corner. The certificate by its terms matured on March 29, 1986, and was payable upon request of either depositor upon maturity. The certificate's contractual conditions of transfer required that transfer be entered into the books of the bank and that a new certificate be issued to the transferee.

In late December, 1985, Golden and Bernadean entered the bank with the original certificate of deposit and indicated to a teller that they wished to have the certificate transferred to Bernadean's name only. The teller inked out Golden's name and social security number from the certificate and entered Bernadean's social security number in the upper left-hand corner. This transfer was never recorded in the bank's official records, and no new certificate was ever issued to Bernadean.

Shannon Poirier had been in default on the business note's terms of repayment since December 1, 1985. The bank obtained a replevin judgment on certain other collateral in March, 1986. Shannon was

subsequently discharged in bankruptcy and is no longer obligated for the unpaid balance of the note.

On March 31, 1986, Bernadean presented the matured certificate of deposit for payment. The bank refused to redeem it and instead renewed the certificate for an additional six-month period. On April 24, 1986, the bank set off the entire amount of the certificate against the unpaid balance of the business note cosigned by Golden.

Golden and Bernadean sued the bank for the face amount of the certificate, and the bank counterclaimed for a money judgment on the note. The Poiriers brought a motion for summary judgment. The trial court granted the Poiriers' motion allowing a judgment of $13,751.08 plus interest and costs. The bank deferred its counterclaim awaiting outcome of this appeal.

■ The granting of a summary judgment is a question of law that we review without deference to the trial court. *Waters v. United States Fidelity & Guar. Co.*, 124 Wis. 2d 275, 278, 369 N.W.2d 755, 757 (Ct. App. 1985). When reviewing the grant of summary judgment, we apply the same methodology as the trial court. *Banaszak v. Banaszak*, 133 Wis. 2d 358, 361, 395 N.W.2d 614, 615 (Ct. App. 1986). Because the material facts are not in dispute, we need only decide if the Poiriers were entitled to judgment as a matter of law.

The bank advances two arguments to justify its refusal to redeem the certificate when it was presented for payment. The bank first argues that the business note executed by Shannon and cosigned by Golden created a security interest in the certificate and that, accordingly, all of Golden's or Bernadean's rights were subject to that security interest. The bank

reaches this conclusion based upon certain language in the business note that reads:

> The Maker grants to Bank a security interest and lien in any demand or savings account Maker may at any time have with Bank. Bank may, at any time after the occurrence of an event of default, without notice or demand, set-off against any deposit balances or other money now or hereafter owed any Maker by Bank any amount unpaid under this Note.

To determine the validity of this contention, we apply ch. 409, which governs a transaction involving an interest in an account evidenced by a certificate of deposit. Sections 409.102; 409.104(1), (13); and 409.105(1)(e), Stats. Section 409.203(1), Stats., provides in relevant part:

> [A] security interest is not enforceable against the debtor or 3rd parties with respect to the collateral and does not attach unless:
>
> (a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ....

■
Applying sec. 409.203(1) to the facts of this case, we conclude that the bank did not have a valid security interest in the certificate of deposit. Neither condition has been met. As to the first condition, the bank did not have possession of the certificate. *See Walton v. Piqua State Bank,* 466 P.2d 316, 329 (Kan. 1970). The certificate of deposit has always been in the Poiriers' possession, and the Poiriers have never transferred or surrendered the certificate to the bank.

As to the second condition, the bank apparently contends that the note's language "the Maker grants Bank a security interest and lien in any demand or savings account Maker may at any time" creates a security agreement including the certificate of deposit as collateral. We disagree. Although there is an issue whether the note creates a valid security agreement, we need not address this issue because the purported security agreement does not contain an adequate description of the certificate of deposit as collateral.

The purported security agreement listed "demand or savings accounts" as the designated collateral. While these terms are not defined in the agreement, neither demand nor savings accounts encompass certificates of deposit. First, "demand deposits" are defined as "funds that may be withdrawn at any time, without prior notice to the bank." E.N. Compton, *Principles of Banking* 256 (1981). Second, "certificates of deposit" are defined as "time deposits." *Id.* at 7. Finally, a certificate of deposit is not a savings account nor is it argued to be such by either party. *Id.* at 89–90.

Additional authority for the proposition that demand or savings accounts do not encompass certificates of deposit is sec. 409.105(1)(f), which provides:

> "Deposit account" means a demand, time, savings, passbook or like account maintained with a bank, savings and loan association, credit union or like organization, *other than an account evidenced by a certificate of deposit.* (Emphasis added.)

Under this definition, Wisconsin distinguishes between demand and savings accounts and the class of accounts evidenced by a certificate of deposit.

Accordingly, because the purported security agreement did not specify a certificate of deposit or any class of accounts that encompasses such certificates, the bank has failed to meet the second condition that the security agreement adequately identify the collateral. If the bank intended to include an account evidenced by a certificate of deposit as collateral, then it should have so stated. For similar reasoning, *see Dallas/Fort Worth Airport Bank v. Dallas Bank & Trust Co.*, 667 S.W.2d 572, 574–75 (Tex. Ct. App. 1984).

The bank next argues that it had a right of setoff against the funds reflected in the certificate of deposit and this right of setoff authorized the bank to withhold payment. While we agree that the bank had a right of setoff, we disagree that this right authorized the bank to refuse payment of the certificate of deposit without first setting off the funds against the debt.

We find no authority, nor has the bank cited any, that authorizes the bank to withhold payment without first exercising its right of setoff. On the contrary, the general rule is that until a bank exercises its right of setoff, it cannot lawfully withhold payment of funds. *See Peoples State Bank v. Caterpillar Tractor Co.*, 12 N.E.2d 123, 126 (Ind. 1938); 10 Am. Jur. 2d *Banks* sec. 666 (1963). Therefore, when the Poiriers presented the certificate of deposit for payment, the bank was obligated either to make payment as requested or to set off the funds against any claim they may have by virtue of the provisions of the business note that was then in default. When the bank did neither, its refusal to make payment was without lawful authority.

Accordingly, we affirm the court's judgment in favor of Golden and Bernadean Poirier. In so holding,

we need not determine what, if any, interest Golden has in the certificate of deposit nor need we address the effect of the attempted transfer of the certificate's title to Bernadean. Finally, we note that the bank has a claim pending against Golden for his obligation on the business note. Because the bank voluntarily elected to defer trial of its counterclaim, the bank is not restricted from pursuing its rights under the counterclaim.

*By the Court.*—Judgment and order affirmed.